22-CV-3807 (HG)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ABU SIDDIQUE,

Plaintiff,

-against-

CITY OF NEW YORK, et al.,

Defendants.

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS CITY OF NEW YORK AND
HINOLITO INOA'S MOTION FOR SUMMARY
JUDGMENT**

*HON. SYLVIA O. HINDS-RADIX*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

*Of Counsel: Qiana Smith-Williams*
*Tel: (212) 356-2360*
*Matter No. 2022-042932*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................... iii

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ....................................................................................... 2

STANDARD OF REVIEW ...................................................................................... 4

ARGUMENT

      POINT I

           THERE WAS PROBABLE CAUSE TO ARREST
           PLAINTIFF BASED ON THE CIRCUMSTANCES
           OF THE IPHONE SALE ............................................................... 5

      POINT II

           BECAUSE PLAINTIFF DID NOT SUFFER ANY
           POST-ARRAIGNMENT DEPRIVATION OF
           LIBERTY HIS § 1983 MALICIOUS
           PROSECUTION CLAIM FAILS ................................................. 9

      POINT III

           OFFICER INOA IS ENTITLED TO QUALIFIED
           IMMUNITY ................................................................................ 12

      POINT IV

           PLAINTIFF HAS NOT ARTICULATED A
           VIABLE MONELL CLAIM ...................................................... 14

      POINT V

           PLAINTIFF'S STATE LAW CLAIMS SHOULD
           BE DISMISSED ......................................................................... 17

           A.  Plaintiff's Malicious Prosecution Claim Is
               Time-Barred ..................................................................... 17

           B.  Plaintiff's False Arrest and Assault and Battery
               Claims Fail Because There Was Probable Cause
               to Arrest .......................................................................... 18

**Page**

C.  Plaintiff's Claim for Intentional Infliction of Emotional Distress Should Be Dismissed ........................................ 19

D.  Plaintiff Fails to State a Claim For Negligent Infliction of Emotional Distress .................................................... 20

E.  Plaintiff's Negligence Claims Fails As A Matter of Law ...................................................................................... 22

F.  Plaintiff Does Not Have a Viable Negligent Hiring, Training and Supervision Claim ........................................... 22

POINT VI

PLAINTIFF'S REMAINING CLAIMS ARE NOT VIABLE .......................................................................................... 23

CONCLUSION ................................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**                                                                                                          **Pages**

Albright v. Oliver,
   510 U.S. 266 (1994).............................................................................................24

Anderson v. Liberty Lobby, Inc.,
   477 U.S. 242, 106 S. Ct. 2505 (1986)...............................................................5

Baker v. Dorfman,
   239 F.3d 415 (2d Cir. 2000)............................................................................21

Baker v. McCollan,
   443 U.S. 137, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979)....................................24

Batista v. Rodriguez,
   702 F.2d 393 (2d Cir. 1983)............................................................................15

Batson-Kirk v. City of New York,
   07-CV-1950, 2009 U.S. Dist. LEXIS 44841
   (E.D.N.Y. May 28, 2009) ...............................................................................22

Beach v. City of New York,
   21 Civ. 06737, 2023 U.S. Dist. LEXIS 151922
   (S.D.N.Y. Aug. 28, 2023) ........................................................................ 18-19

Bernard v. United States,
   25 F.3d 98 (2d Cir. 1994)...............................................................................22

Board of Comm'rs of Bryan Cty. v. Brown,
   520 U.S. 397 (1997).......................................................................................17

Boyd v. City of New York,
   336 F.3d 72 (2d Cir. 2003)..............................................................................13

Bradway v. Gonzales,
   26 F.3d 313 (2d Cir. 1994)..............................................................................13

Brunson v. City of New York,
   07-CV-2308, 2011 U.S. Dist. LEXIS 158924
   (E.D.N.Y. Jan. 26, 2011) ...............................................................................20

Buchy v. City of White Plains,
   14 Civ. 1806, 2015 U.S. Dist. LEXIS 163469
   (S.D.N.Y. Dec. 7, 2015).................................................................................24

**<u>Cases</u>**                                                                                                                      **<u>Pages</u>**

<u>Burg v. Gosselin</u>,
    591 F.3d 95 (2d Cir. 2010)..........................................................................10

<u>Connick v. Thompson</u>,
    131 S. Ct. 1350 (2011)................................................................................17

<u>Cora v. Rennassace Mens Shelter</u>,
    23-CV-9086, 2024 U.S. Dist. LEXIS 10999
    (E.D.N.Y. Jan. 22, 2024) ...........................................................................24

<u>D'Amico v. City of New York</u>,
    132 F.3d 145 (2d Cir. 1998),
    <u>cert. denied</u>, 524 U.S. 911 (1998) ...............................................................4

<u>De Rosa v. Michelman</u>,
    584 N.Y.S.2d 202 (App. Div. 2d Dep't 1992) .......................................21

<u>Devenpeck v. Alford</u>,
    543 U.S. 146 (2004)......................................................................................6

<u>Dukes v. City of New York</u>,
    879 F. Supp. 335 (S.D.N.Y. 1995) ....................................................4, 5, 6

<u>Ehrens v. Lutheran Church</u>,
    385 F.3d 232 (2d Cir. 2004)......................................................................22

<u>Faruki v. City of New York</u>,
    517 F. App'x 1 (2d Cir. 2013) ..................................................................10

<u>Feinberg v. City of N.Y.</u>,
    99 Civ. 12127, 2004 U.S. Dist. LEXIS 16098
    (S.D.N.Y. Aug. 13, 2004) ..........................................................................23

<u>Gallo v. Prudential Residential Servs.</u>,
    22 F.3d 1219 (2d Cir. 1994)........................................................................4

<u>Guzman v. City of New York</u>,
    653 N.Y.S.2d 143 (N.Y. App. Div. 2d Dep't 1997) ...............................18

<u>Hagie v. General Motors Corp.</u>,
    98-CV-0634E(H), 1999 U.S. Dist. LEXIS 5227 (W.D.N.Y. 1999) ........21

<u>Hamilton v. City of New York</u>,
    07-CV-3633, 2009 U.S. Dist. LEXIS 63432
    (E.D.N.Y. July 23, 2009) ...........................................................................19

**Cases**                                                                                            **Pages**

Hansel v. Sheridan,
    991 F. Supp. 69 (N.D.N.Y. 1998)................................................................19

Harris v. Binghamton Police Dep't,
    22-CV-977, 2023 U.S. Dist. LEXIS 199404
    (N.D.N.Y. Nov. 7, 2023) .........................................................................24

Hazan v. City of New York,
    98 Civ. 1716, 1999 U.S. Dist. LEXIS 10499
    (S.D.N.Y. July 9, 1999) .........................................................................19

Heck v. Humphrey,
    512 U.S. 477, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994)................................9

Hone v. City of Oneonta,
    157 A.D.3d 1030 (N.Y. App. Div. 3rd Dep't 2018) ...................................18

Hunter v. Bryant,
    502 U.S. 224 (1991)..............................................................................12

Hyde v. Caputo,
    98-CV-6772, 2001 U.S. Dist. LEXIS 6253
    (E.D.N.Y. May 11, 2001) .......................................................................18

Jaegly v. Couch,
    439 F.3d 149 (2d Cir. 2006)......................................................................6

Janetka v. Dabe,
    892 F.2d 187 (2d Cir. 1989).......................................................................5

Jean-Laurent v. Wilkinson,
    540 F. Supp. 2d 501 (S.D.N.Y. 2008)........................................................23

Jenkins v. City of New York,
    478 F.3d 76 (2d Cir. 2007)........................................................................17

Jocks v. Tavernier,
    316 F.3d 128 (2d Cir. 2003)........................................................................9

Johnston v. Port Auth. of N.Y. & N.J.,
    09-CV-4432, 2011 U.S. Dist. LEXIS 82815
    (E.D.N.Y. July 28, 2011) .....................................................................10, 12

Kenneth R. v. Roman Catholic Diocese of Brooklyn,
    229 A.D.2d 159 (2d Dept. 1997) ..............................................................22

**Cases**                                                                                                                          **Pages**

Kirk v. Metropolitan Transp. Authority,
    99 Civ. 3787, 2001 U.S. Dist. LEXIS 2786
    (S.D.N.Y. Mar. 14, 2001) ...................................................................................................20

Liberian Cmty. Ass'n of Conn. v. Lamont,
    970 F.3d 174 (2d Cir. 2020)...........................................................................................13

Malley v. Briggs,
    475 U.S. 335 (1986).......................................................................................................12

Marcavage v. City of New York,
    689 F.3d 98 (2d Cir. 2012)...............................................................................................6

Matsushita Elect. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574, 106 S. Ct. 1348 (1986)..............................................................................4

Maxwell v. City of New York,
    380 F.3d 106 (2d Cir. 2004)...........................................................................................19

Memphis Community Sch. Dist. v. Stachura,
    477 U.S. 299, 106 S.Ct. 2537,
    91 L.Ed.2d 249 (1986) .....................................................................................................9

Mena v. City of New York,
    15 Civ. 3707, 2019 U.S. Dist. LEXIS 71752
    (S.D.N.Y. Apr. 25, 2019)................................................................................................22

Michigan v. DeFillippo,
    443 U.S. 31, 99 S. Ct. 2627 (1979)..................................................................................6

Monell v. Dep't of Social Services,
    436 U.S. 658 (1978)................................................................................................14, 15

Morgan v. Nassau County,
    03-CV-5109, 2009 U.S. Dist. LEXIS 79180
    (E.D.N.Y. Sept. 2, 2009)......................................................................................16, 19, 20

Mortise v. United States,
    102 F.3d 693 (2d Cir. 1996)...........................................................................................21

Moulthrop v. Slavin,
    700 Fed. Appx. 75 (2d. Cir. 2017) ...............................................................................5, 6

Murphy v. Lynn,
    118 F.3d 938 (2d Cir.1997)...........................................................................................9, 12

**Cases**                                                                     **Pages**

Norton v. Town of Islip,
12-CV-4463 (PKC), 2016 U.S. Dist. LEXIS 7004
(E.D.N.Y. Jan. 21, 2016),
aff'd, 678 F. App'x 17 (2d Cir. 2017) ...................................................12

O'Neill v. Krzeminski,
839 F.2d 9 (2d Cir. 1988).........................................................................23

Oklahoma City v. Tuttle,
471 U.S. 808 (1985) .................................................................................15

Perkins v. City of Rochester,
641 F.Supp.2d 168 (W.D.N.Y. 2009) .....................................................22

Plumhoff v. Rickard,
134 S. Ct. 2012 (2014) .............................................................................13

Ricciuti v. New York City Transit Auth.,
941 F.2d 119 (2d Cir. 1991).....................................................................15

Ricciuti v. N.Y.C. Transit Auth.,
124 F.3d 123 (2d Cir. 1997).......................................................................6

Richardson v. Nassau County,
277 F. Supp. 2d 196 (E.D.N.Y. 2003) .....................................................16

Riddick v. City of New York,
21 Misc.3d 1138A (Sup. Ct. Bronx Co. 2004) ........................................22

Rivera v. City of New York,
392 F. Supp. 2d 644 (S.D.N.Y. 2005) ......................................................19

Rizk v. City of N.Y.,
462 F. Supp. 3d 203 (E.D.N.Y. 2020) ......................................................19

Robinson v. Via,
821 F.2d 913 (2d Cir. 1987)......................................................................13

Rohman v. New York City Transit Auth. (NYCTA),
215 F.3d 208 (2d Cir. 2000).................................................................11, 12

Rotenberg v. Town of Mamaroneck,
08 Civ. 4703, 2010 U.S. Dist. LEXIS 97406
(S.D.N.Y. Aug. 24, 2010) .........................................................................10

**Cases**                                                                                                          **Pages**

Savino v. City of New York,
    331 F.3d 63 (2d Cir. 2003)........................................................................5, 9

Singer v. Fulton Cty. Sheriff,
    63 F.3d 110 (2d Cir. 1995).........................................................................9

Soliman v. City of N.Y.,
    15-CV-5310, 2017 U.S. Dist. LEXIS 50599
    (E.D.N.Y. Mar. 31, 2017)..........................................................................23

Stuto v. Fleishman,
    164 F.3d 820 (2d Cir. 1999).......................................................................20

Swartz v. Insogna,
    704 F.3d 105 (2d Cir. 2013).......................................................................11

Tieman v. City of Newburgh,
    13 Civ. 4178, U.S. Dist. LEXIS 38703
    (S.D.N.Y. Mar. 26, 2015)..........................................................................16

United States v. Webb,
    623 F.2d 758 (2d Cir. 1980).......................................................................6

Vasconcellos v. City of N.Y.,
    12 Civ. 8445 (CM) (HBP), 2015 U.S. Dist. LEXIS 121572
    (S.D.N.Y. Sept. 9, 2015)...........................................................................2

Velasquez v. Bankich,
    97 Civ. 8424 (AKH), 2000 U.S. Dist. LEXIS 15412
    (S.D.N.Y. August 1, 2000) ........................................................................5

Wahlstrom v. Metro-North Commuter R.R.,
    89 F. Supp.2d 506 (S.D.N.Y. 2000)...........................................................21

Weyant v. Okst,
    101 F.3d 845 (2d Cir. 1996).......................................................................5

Wiles v. City of New York,
    13 Civ. 2898, 2016 U.S. Dist. LEXIS 148024
    (S.D.N.Y. Oct. 25, 2016),
    aff'd, 724 F. App'x 52 (2d Cir. 2018) ........................................................10

Wolkstein v. Morgenstern,
    713 N.Y.S.2d 171 (App. Div. 1st Dep't 2000) ............................................21

**Cases**                                                                        **Pages**

<u>Wong v. Yoo</u>,
    649 F. Supp. 2d 34 (E.D.N.Y. 2009) ............................................................. 9-10

<u>Wray v. City of New York</u>,
    490 F.3d 189 (2d Cir. 2007)..................................................................17

<u>Zellner v. Summerlin</u>,
    494 F.3d 344 (2d Cir. 2007)....................................................................6

**<u>Statutes</u>**

42 U.S.C. § 1983................................................................5, 9, 10, 11, 12, 14, 23, 24

CPL § 510.40 ......................................................................................11, 12

Fed. R. Civ. P. 56 ......................................................................................1

GML § 50-e......................................................................................17, 18

GML § 50-i......................................................................................17, 18

Local Civil Rule 56.1(c) ..................................................................................2

N.Y. Penal Law § 110.10..................................................................................6

N.Y. Penal Law § 165.55..................................................................................6

N.Y. Penal Law § 165.55(2) ..............................................................................8



UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------ x

ABU SIDDIQUE,

                                            Plaintiff,

                    -against-

CITY OF NEW YORK, et al.,

                                            Defendants.

------------------------------------------------------------------------ x

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS CITY OF NEW YORK AND HINOLITO INOA'S MOTION FOR SUMMARY JUDGMENT**

22-CV-3807 (HG)

Defendants City of New York ("City") and Hinolito Inoa (collectively "defendants"), by their attorney, the Honorable Sylvia O. Hinds-Radix, Corporation Counsel of the City of New York, respectfully submit this memorandum of law in support of their motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

<u>**PRELIMINARY STATEMENT**</u>

Plaintiff was arrested on March 10, 2021, after he purchased what he was told, or clearly should have suspected, was a stolen iPhone. Plaintiff was detained at the 79th Precinct for approximately four (4) hours and released with a desk appearance ticket. After two courts appearances, one of which was remote, the criminal prosecution was dismissed on or about July 28, 2021.

Plaintiff commenced this lawsuit on June 28, 2022, alleging a laundry list of claims including, but not limited to, claims for false arrest, malicious prosecution, municipal liability, negligence, assault and battery, and intentional infliction of emotional distress. Plaintiff's claims should be dismissed because: (1) there was probable cause to arrest him; (2) plaintiff cannot satisfy the elements of his malicious prosecution claim; (3) Detective Inoa is entitled to qualified immunity; (4) plaintiff has failed to articulate a viable municipal liability claim and/or to adduce

evidence in support of any such claim, and (5) the state law claims are either untimely or fail as a matter of law.

## STATEMENT OF FACTS[1]

On March 10, 2021, New York City Police Department ("NYPD") Officer Hinolito Inoa and his partner, Officer Benjamin Rodriguez, were assigned to the NYPD's 79th Precinct.  See Defendants City of New York and Hinolito Inoa's Local Rule 56.1 Statement of Undisputed Facts ("Def. 56.1") at ¶ 1.  Officers Inoa and Rodriguez, along with a team, were assigned to address an ongoing precinct condition, namely complaints that stores within the confines of the 79th precinct were purchasing and reselling stolen mobile phones.  Id. at ¶ 2.  In an effort to combat this precinct condition, Officers Inoa and Rodriguez were instructed by their supervisor, Sgt. James Priore, to try to sell a phone at two separate electronic stores.  Id. at ¶ 3.  The operation was known as a "iPhone Fencing Operation."  Id. at ¶ 4.

As part of the operation, Sgt. Priore told Officer Inoa that upon entering the targeted stores, Officer Inoa was to tell the store clerk that he had a phone that he stole from his girlfriend and to ask whether the clerk wanted to buy it.  Id. at ¶ 5.  Sgt. Priore gave Officer Inoa an iPhone to use for the purposes of the operation.  Id. at ¶ 6.  Officer Inoa did not know whether the phone was actually stolen and did not ask Sgt. Priore.  Id. at ¶ 7.

On March 10, 2021, Plaintiff was working as the manager at Fix N Colors, located at 1250 Fulton Street in Brooklyn, NY.  Id. at ¶ 9.  Fix N Colors sells cell phones and accessories and repairs devices.  Id. at ¶ 10.  Fix N Colors was one of the resale stores that was part of the iPhone

---

[1] The facts stated herein are not conceded by defendants and are assumed to be true only for purposes of this motion.  See Local Civil Rule 56.1(c) (facts are admitted only "for the purposes of the motion").  Defendants reserve the right to assert different and/or conflicting facts at trial. See Vasconcellos v. City of N.Y., 12 Civ. 8445 (CM) (HBP), 2015 U.S. Dist. LEXIS 121572, at *4 (S.D.N.Y. Sept. 9, 2015).

Fencing Operation on March 10, 2021.  Officer Inoa, while wearing plain clothes, entered Fix N Colors.  Id. at ¶ 11.  Officer Rodriquez did not initially enter the store with Officer Inoa.  Id. at ¶ 12.  Officer Rodriquez was approximately five to six feet away from Officer Inoa while Officer Inoa was inside of Fix N Colors.  Id. at ¶ 13.  Officer Rodriguez and Sgt. Priore were on a three-way telephone call with Officer Inoa during the operation so that they could hear the conversation that was going on in the store.  Id. at ¶¶ 14-16.

While inside Fix N Colors, Officer Inoa told the man, later identified as plaintiff Abu Siddique, that he had a problem with his girlfriend, that he needed money, and wanted to sell the phone.  Id. at ¶ 17.  Officer Rodriguez also heard Officer Inoa ask the man standing behind the counter in Fix N Colors, plaintiff, if he wanted to buy a stolen phone.  Id. at ¶ 18.  Plaintiff took the phone from Officer Inoa and inspected it.  Id. at ¶ 19.  After he took the phone from Officer Inoa, he checked the phone's IMEI number on a website called "Unlimited Unlock."  Id. at ¶ 20. The report generated by "Unlimited Unlock" as a result of plaintiff's purported search of the phone's IMEI does not indicate whether or not the phone is stolen.  Id. at ¶ 22.

While inside the store, Officer Inoa was pacing around the store, making strange hand gestures, and speaking to himself in view of plaintiff.  See Surveillance Video taken from Fix N Colors on March 10, 2021, annexed to the Declaration of Rachel Seligman Weiss ("Weiss Decl."), as Exhibit J.  Plaintiff asked Officer Inoa for identification.  Id. at ¶ 23.  Officer Inoa refused to provide identification and walked out of the store.  Id. at ¶ 24.  In plaintiff's experience, if a person refuses to show identification when selling a phone then it means that the phone may be stolen. Id. at ¶ 25.  Approximately ten minutes later, Officer Inoa came back into Fix N Colors with Officer Rodriguez.  Id. at ¶ 26.  Officer Rodriguez provided plaintiff with a New York State driver's license and plaintiff made a copy of it.  Id. at ¶ 27.  Plaintiff then purchased the phone for 150.00

dollars. Id. at ¶ 28. Although it was the practice of Fix N Colors to provide a receipt for every transaction, plaintiff does not recall providing Officer Inoa with a receipt. Id. at ¶ 29.

As Officers Inoa and Rodriguez were leaving Fix N Colors, Officer Rodriguez used his NYPD issued radio to provide the description of the individual who had just bought the stolen phone to his team. Id. at ¶ 30. Plaintiff was thereafter arrested. Id. at ¶ 31. Plaintiff was taken to the 79th precinct. Id. at ¶ 32. Plaintiff was charged with Criminal Possession of Stolen Property. Id. at ¶ 33. At approximately 11:15 p.m. on March 10, 2021, plaintiff was issued a Desk Appearance Ticket ("DAT") which required him to appear in Court on June 8, 2021. Id. at ¶ 34.

In connection with the criminal matter, plaintiff made a total of two (2) court appearances. Id. at ¶ 35. Plaintiff's first court appearance was in person on June 8, 2021, for the purposes of his arraignment. Id. at ¶ 36. Plaintiff's second court appearance was conducted remotely via Zoom. Id. at ¶ 37. No restrictions were placed on plaintiff as a result of his arrest or prosecution. Id. at ¶ 38. Plaintiff did not post bail. Id. at ¶ 39. Plaintiff is not seeking damages due to lost business income. Id. at ¶ 40.

## STANDARD OF REVIEW

Summary judgment is appropriate where no genuine issue of material act exists. D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998), cert. denied, 524 U.S. 911 (1998). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is 'no genuine issue for trial.'" Matsushita Elect. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). The Second Circuit has held that a "moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." Gallo v. Prudential Residential Servs., 22 F.3d 1219, 1223-23 (2d Cir. 1994). "[T]he substantive law governing the case will identify those facts that are material, and only disputes over facts that might affect the outcome of the suit under the governing law will

4

properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." <u>Dukes v. City of New York</u>, 879 F. Supp. 335, 339 (S.D.N.Y. 1995). "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." <u>Id</u>.

To survive a motion for summary judgment, the non-moving party must do more than present evidence that is merely colorable, conclusory, or speculative. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50, 106 S. Ct. 2505, 2551 (1986). Additionally, the non-movant "may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." <u>Velasquez v. Bankich</u>, 97 Civ. 8424 (AKH), 2000 U.S. Dist. LEXIS 15412, at *4 (S.D.N.Y. August 1, 2000). He must offer evidence demonstrating that there exists a genuine issue of fact which must be decided by a fact finder.

<u>**ARGUMENT**</u>

**POINT I**

**THERE WAS PROBABLE CAUSE TO ARREST PLAINTIFF BASED ON THE <u>CIRCUMSTANCES OF THE iPHONE SALE</u>**

"A Section 1983 claim for false arrest, resting on the Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause, is substantially the same as a claim for false arrest under New York law." <u>Weyant v. Okst</u>, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted); <u>Janetka v. Dabe</u>, 892 F.2d 187, 189 (2d Cir. 1989). In order to state a claim for false arrest/imprisonment under New York law, a plaintiff must prove, through evidence, the following four elements: (1) the defendant intended to confine plaintiff; (2) plaintiff was conscious of the confinement; (3) did not consent to such confinement; and (4) the confinement was not otherwise privileged. <u>Savino v. City of New York</u>, 331 F.3d 63 (2d Cir. 2003). Probable cause is a complete defense to a claim of false arrest. <u>Moulthrop v. Slavin</u>, 700

Fed. Appx. 75, 77 (2d. Cir. 2017).  "Furthermore, "whether the suspect was acquitted later of the charges for which he was arrested is irrelevant to the determination of probable cause."  Michigan v. DeFillippo, 443 U.S. 31, 36, 99 S. Ct. 2627 (1979).

Where there is probable cause to arrest for any offense, regardless of whether the charge is listed on an arrest report, a false arrest claim is subject to dismissal.  Devenpeck v. Alford, 543 U.S. 146, 153-54 (2004); see also, Marcavage v. City of New York, 689 F.3d 98, 110 (2d Cir. 2012) (citing Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir 2006)); Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007) ("[A]n arrest is not unlawful so long as the officer has knowledge of, or reasonably trustworthy information as to, facts and circumstances sufficient to provide probable cause to believe that the person arrested has committed any crime.").  Once a police officer has a reasonable basis for believing there is probable cause to arrest, "he is not required to explore and eliminate every theoretically plausible claim of innocence for making an arrest."  Ricciutti v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997); United States v. Webb, 623 F.2d 758 (2d Cir. 1980); Dukes v. City of New York, 879 F. Supp. 335, 343 (S.D.N.Y. 1995).

Furthermore, "a person in the business of buying, selling or otherwise dealing in property who possesses stolen property is presumed to know that such property was stolen if he obtained it without having ascertained by reasonable inquiry that the person from whom he obtained it had a legal right to possess it."  N.Y. Penal Law § 165.55 (McKinney).  It is no defense to assert that a charge for violation of § 165.55 is invalid because the property in question was not indeed stolen and so the charged individual is this innocent.  N.Y. Penal Law § 110.10 (McKinney).  What is of consequence is not the status of the property, but rather the state of mind of the individual attempting to come into possession of goods – if they believe the property to be stolen, then they can be charged.  Id.

6

Here, based upon the information available to Officer Inoa, there was probable cause to arrest plaintiff for criminal possession of stolen property and/or attempted criminal possession of stolen property, at the very least.  Specifically: 1) prior to entering Fix N Colors, Officer Inoa was aware that local businesses were purchasing and reselling stolen cell phones, 2) upon entering plaintiff's store, Officer Inoa advised plaintiff that he had stolen the cell phone from his girlfriend and needed money; 3) store surveillance footage shows Officer Inoa pacing around the store, making strange hand gestures, speaking to himself, and generally behaving oddly in view of plaintiff; 4) plaintiff only paid $150.00 for an iPhone 11 – this particular iPhone model only having been released in September 2019, less than two years before the incident;[2] 5) plaintiff purchased the phone despite Officer Inoa's refusal to provide identification; and 6) plaintiff did not provide Officer Inoa with a receipt documenting the sale.  Based on these overwhelming facts, it was reasonable for Officer Inoa to believe that plaintiff knowingly purchased what plaintiff believed to be a stolen phone.

Plaintiff will likely contend that there is a dispute of fact as to whether Officer Inoa advised plaintiff that the phone was stolen.  This contention is of no moment.  As an initial matter, plaintiff should not be permitted to invent a dispute of fact via his self-serving allegation that Officer Inoa did not state that the phone was stolen.  The credible evidence in the record is that Officer Inoa was instructed by his superior officer to tell the store clerk that he stole the phone from his girlfriend, Officer Inoa confirmed that he so told plaintiff, and Officer Rodriguez heard Officer Inoa tell plaintiff that the phone was stolen.  Regardless, even if Officer Inoa's statement

---

[2]    See    https://www.apple.com/newsroom/2019/09/apple-introduces-dual-camera-iphone-11/ (Apple Press Release, dated September 10, 2019, indicating that iPhone 11 was slated for in-store purchases beginning September 20, 2019, with a starting price of $699.00) (last visited January 29, 2024).

concerning the stolen phone were disregarded, there was still probable cause for plaintiff's arrest because plaintiff never inquired into whether Officer Inoa was the rightful owner of the phone. Further, plaintiff never asked Officer Inoa to sign any documentation attesting to ownership of the phone and, moreover, plaintiff purchased the phone even after Officer Inoa refused to provide documentation confirming his identity.  Pursuant to N.Y. Penal Law § 165.55(2), a reseller is presumptively in possession of stolen goods where he fails to make a reasonable inquiry as to whether the seller had a legal right of possession.  Plaintiff made no such reasonable inquiry here.

Plaintiff's assertion that he used various paid and unpaid services to "check" if the phone was stolen does not pierce the presumption.  First, plaintiff has not produced any evidence confirming that he consulted any database prior to purchasing the phone on March 10, 2021 as alleged.  To the contrary, the single document produced by plaintiff, purporting to be an IMEI search of the phone, is dated the day *after* the incident and, by plaintiff's own admission, does not indicate whether the phone was stolen or not.  Def. 56.1 at ¶¶ 20-22.  Second, even if the two other databases that plaintiff allegedly checked reflected the name of the rightful owner of the phone, plaintiff never got any identification from Officer Inoa that would confirm his identity as the rightful owner.  Thus, these purported database searches conducted by plaintiff do not, and cannot, suffice to establish that he made any reasonable inquiry into Office Inoa's right to possess or sell the phone.

The confluence of facts presented to Officer Inoa at the time of arrest were sufficient to establish probable cause for plaintiff's  arrest.  As such, plaintiff's false arrest claims under both federal and New York state law must be dismissed.

## POINT II

## BECAUSE PLAINTIFF DID NOT SUFFER ANY POST-ARRAIGNMENT DEPRIVATION OF LIBERTY HIS § 1983 MALICIOUS PROSECUTION CLAIM FAILS

To maintain a claim for malicious prosecution under New York law, plaintiff must prove four elements: (1) the initiation of a proceeding, (2) termination of said proceeding favorably to the plaintiff, (3) lack of probable cause, and (4) malice. Savino v. City of New York, 331 F.3d 63, 72 (2d Cir. 2003). Where, as here, a Fourth Amendment malicious prosecution claim is asserted, the plaintiff must also prove a fifth element – "some deprivation of liberty consistent with the concept of 'seizure.'" Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 116 (2d Cir. 1995). This seizure "must have been effected 'pursuant to legal process.'" Id. at 117 (quoting Heck v. Humphrey, 512 U.S. 477, 484, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994)). Thus, to successfully pursue a § 1983 claim of malicious prosecution in violation of one's Fourth Amendment rights, a "[plaintiff] must show some post-arraignment deprivation of liberty that rises to the level of a constitutional violation." Id. (citing Memphis Community Sch. Dist. v. Stachura, 477 U.S. 299, 309, 106 S.Ct. 2537, 2544, 91 L.Ed.2d 249 (1986)).

There are a number of post-arraignment circumstances that constitute a deprivation of liberty rising to the level of a Fourth Amendment "seizure." "When the accused is physically detained following arraignment, there can be no question that he has been seized within the meaning of the Fourth Amendment." Murphy v. Lynn, 118 F.3d 938, 945 (2d Cir.1997). Short of post-arraignment incarceration, other circumstances that can constitute a seizure include being subject to bail conditions, see Jocks v. Tavernier, 316 F.3d 128, 136 (2d Cir. 2003) ("the requirements ... obeying the conditions of bail suffice"), enduring restrictions on one's ability to travel, Murphy, 118 F.3d at 945, or even attending a series of court proceedings, see Wong v. Yoo,

649 F. Supp. 2d 34, 67 (E.D.N.Y. 2009) (finding deprivation of liberty prong satisfied where arrestee "appear[ed] in court between eight and ten times over a year and a half"), but see Johnston v. Port Auth. of N.Y. & N.J., 09-CV-4432, 2011 U.S. Dist. LEXIS 82815, at *19-*21 (E.D.N.Y. July 28, 2011) (Gleeson, J.) (finding no constitutional seizure where plaintiff had to appear in court four times without other "burdensome conditions").

In any event, in Burg v. Gosselin, the Second Circuit held that "a pre-arraignment, non-felony summons requiring no more than a later court appearance does not constitute a Fourth Amendment seizure." 591 F.3d 95, 101 (2d Cir. 2010); see also Faruki v. City of New York, 517 F. App'x 1, 2 (2d Cir. 2013) (summary order) (relying on Burg to conclude that a requirement that plaintiff appear in court on two occasions after being arraigned was not a seizure and affirming dismissal of § 1983 malicious prosecution claim). District courts applying Burg similarly have concluded that even multiple court appearances, without more, are not sufficient deprivations of liberty to rise to the level of a constitutional injury. See Johnston, 2011 U.S. Dist. LEXIS 82815, at *19-*21; Wiles v. City of New York, 13 Civ. 2898, 2016 U.S. Dist. LEXIS 148024, at *27-*28 (S.D.N.Y. Oct. 25, 2016), aff'd, 724 F. App'x 52 (2d Cir. 2018); Rotenberg v. Town of Mamaroneck, 08 Civ. 4703, 2010 U.S. Dist. LEXIS 97406, at *7 (S.D.N.Y. Aug. 24, 2010).

Here, plaintiff cannot demonstrate that he suffered a post-arraignment deprivation of liberty sufficient to maintain a § 1983 malicious prosecution claim. Crucially, plaintiff was not detained after his arraignment. Def. 56.1 at ¶¶ 37 and 38. Further, plaintiff did not have to post bail, endure travel restrictions, or attend a "series of court proceedings." Def. 56.1 at ¶¶ 37-40. Plaintiff made only two court appearances, one of which was the arraignment itself. Def. 56.1 at ¶¶ 36-37. Plaintiff's only post-arraignment "obligation" was to dial into a virtual hearing via Zoom

on July 28, 2021, when the non-felony charge against him was dismissed – this cannot suffice to establish a post-arraignment deprivation.  Def. 56.1 at ¶¶ 38.

Swartz v. Insogna does not foreclose the conclusion that a single virtual court appearance does not constitute a deprivation of liberty sufficient to establish a malicious prosecution claim.[3] 704 F.3d 105 (2d Cir. 2013).  In Swartz, the plaintiff was arrested for disorderly conduct and transported to a police precinct, where he was issued an appearance ticket and released.  Id. at 108.  Subsequently, the plaintiff appeared at an arraignment and thereafter made three more in-person court appearances over the course of several years before his charges were dismissed.  Id.  The Second Circuit held that the plaintiff had satisfied the fifth element of a § 1983 malicious prosecution claim, reasoning that "a post-arraignment defendant who is obligated to appear in court in connection with criminal charges whenever his attendance is required suffers a Fourth Amendment deprivation of liberty."  Id. at 112 (emphasis added) (internal citations omitted).

Swartz is easily distinguishable from the present action.  Whereas the plaintiff in Swartz made multiple in-person court appearances post-arraignment, here, plaintiff made only a single virtual court appearance on Zoom.  It is hard to imagine how attending a virtual court proceeding constitutes a "seizure" of one's person, let alone a "seizure" of constitutional dimensions.  More importantly, plaintiff's standalone virtual court appearance does not implicate the key rationale underlying the Second Circuit's decision in Swartz.  As one court noted, "what the Second Circuit found most salient in Rohman and Swartz was the applicability of Section 510.40—i.e., the obligation to return to court whenever an appearance is requested, with its attendant travel restrictions—and not the number of post-arraignment court appearances required of the criminal

---

[3] In his opposition to defendants' pre-motion conference letter, dated July 28, 2023, plaintiff contends that his malicious claim is saved by Swartz.  Dkt. Entry No. 39.  Plaintiff is wrong.

defendant." <u>Norton v. Town of Islip</u>, 12-CV-4463, 2016 U.S. Dist. LEXIS 7004, at *13 (E.D.N.Y.

Jan. 21, 2016), <u>aff'd</u>, 678 F. App'x 17 (2d Cir. 2017); <u>see also</u> <u>Rohman v. New York City Transit</u>

<u>Auth. (NYCTA)</u>, 215 F.3d 208, 216 (2d Cir. 2000) (reasoning that an arrestee released on his own

recognizance must "ordinarily remain in the state" pursuant to N.Y. Crim. Proc. Law § 510.40).

Here, that plaintiff's only post-arraignment appearance was made remotely necessarily

implies that he was not under an obligation to physically "return to court whenever an appearance

[was] requested." Further, because plaintiff was permitted to appear remotely, and thus could have

made his appearance from anywhere in the world, his later virtual appearance did not impose the

"attendant travel restrictions" that the Second Circuit has found central to the deprivation of liberty

analysis. Cf. <u>Murphy</u>, 118 F.3d at 945–46 (restrictions on out-of-state travel for an arraigned

defendant and his multiple required appearances in court amounted to seizures for Fourth

Amendment purposes); <u>Rohman</u>, 215 F.3d at 216 (same). Because plaintiff cannot point to

evidence demonstrating that his single virtual court appearance somehow placed an actual

restriction on his ability to travel, or imposed other "burdensome obligations," <u>Johnston</u>, 2011 U.S.

Dist. LEXIS 82815, at *7, he cannot satisfy the deprivation of liberty element. Therefore,

plaintiff's § 1983 malicious prosecution claim must be dismissed.

**POINT III**

**OFFICER   INOA   IS   ENTITLED   TO**
<u>**QUALIFIED IMMUNITY**</u>

Detective Inoa is entitled to qualified immunity. "The qualified immunity standard 'gives

ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who

knowingly violate the law.'" <u>Hunter v. Bryant</u>, 502 U.S. 224, 229 (1991) (per curium) (quoting

<u>Malley v. Briggs</u>, 475 U.S. 335, 341 (1986)). "[Q]ualified immunity shields public officials

performing discretionary functions from civil liability insofar as their conduct does not violate

12

clearly established statutory or constitutional rights of which a reasonable person would have known… or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights." Bradway v. Gonzales, 26 F.3d 313, 317-18 (2d Cir. 1994) (internal citations and quotations omitted). A constitutional right cannot be said to be clearly established unless its contours are "beyond debate" such that "any reasonable official in the defendant's shoes would have understood that he was violating [such right]." Plumhoff v. Rickard, 134 S. Ct. 2012, 2023 (2014); see also Liberian Cmty. Ass'n of Conn. v. Lamont, 970 F.3d 174, 186 (2d Cir. 2020) ("Clearly established means that, at the time of the [official's] conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful.") (internal quotations omitted). The Supreme Court has "repeatedly told courts... not to define clearly established law at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." Plumhoff, 134 S. Ct. at 2023 (omission in original) (citation and internal quotation marks omitted)

Further, in the context of a false arrest claim, an officer "is entitled to qualified immunity as a matter of law if the undisputed facts and all permissible inferences favorable to the plaintiff show either (a) that it was objectively reasonable for the officer to believe that probable cause existed, or (b) that officers of reasonable competence could disagree on whether the probable cause test was met." Robinson v. Via, 821 F.2d 913, 921 (2d Cir. 1987) (finding defendant officer was entitled to qualified immunity because the decision to arrest plaintiff based on information defendant received from witnesses and defendant's own observations was objectively reasonable); Boyd v. City of New York, 336 F.3d 72, 76 (2d Cir. 2003) ("Probable cause does not require absolute certainty … if police officers of reasonable competence could disagree as to whether there

was sufficient probable cause, there is 'arguable' probable cause sufficient to warrant qualified immunity for the defendant officers.").

Here, it was not clearly established that Officer Inoa could not arrest plaintiff for attempted criminal possession of stolen property where, even if plaintiff was not advised that the phone was stolen, the overwhelming circumstances of the sale were conspicuous and plaintiff as a merchandise reseller did not take reasonable steps to verify the officer's legal right to possess the phone before purchasing it. Moreover, it cannot be said that no reasonable officer in possession of the facts known to Officer Inoa – precinct condition of stores reselling stolen cell phones, allegation of problem with girlfriend followed by offer to sell phone, conspicuous behavior by purported seller, no reasonable inquiry into the legal right to possess the phone offered for sale, failure to obtain identification from person selling the phone and/or documentation from said person attesting that he had the lawful right to sale the phone, purchase price below fair market value, and no receipt memorializing the transaction – would have arrested plaintiff. Because reasonable officers could disagree about whether there was probable cause to arrest plaintiff, Officer Inoa is entitled to qualified immunity.

Additionally, pertaining to the malicious prosecution claim, because it is not clearly established that a single post-arraignment court appearance via Zoom constitutes a deprivation of liberty within the Fourth Amendment, Officer Inoa is entitled to qualified immunity on this basis as well.

**POINT IV**

**PLAINTIFF HAS NOT ARTICULATED A VIABLE MONELL CLAIM**

There is no *respondeat superior* liability under § 1983. Monell v. Dep't of Social Services, 436 U.S. 658, 694 (1978). To hold a municipality liable pursuant to § 1983, a plaintiff must

14

establish that the municipality itself was somehow at fault.  Oklahoma City v. Tuttle, 471 U.S. 808, 810 (1985); Monell, 436 U.S. at 690-91 (liability exists only where "action pursuant to official municipal policy of some nature caused a constitutional tort").  In order to state a claim for municipal liability, "a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983).  Further, "a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy."  Ricciuti v. New York City Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991).

Here, plaintiff's amended complaint sets forth a hodgepodge of allegations that are so disjointed that it is difficult to discern what the alleged Monell claim is.  See Plaintiff's First Amended Complaint, Dkt. Entry 15, at ¶¶ 99-121.  Nevertheless, plaintiff appears to allege that defendant City engaged in a policy or practice of:

(i)   Falsely arresting "persons with the intent of turning the innocent immigrant arrestees into informants in exchange for charges being dropped."  See Dkt. No. 15 at ¶ 101;

(ii)  Arresting innocent persons in order to meet arrest quotas, or in the face of clear evidence of innocence, or for the purposes of questioning such individuals about investigations unrelated to their arrests.  See Dkt. No. 15 at ¶¶ 104(a), (c) and (d);

(iii) Executing criminal court complaints containing false information and/or falsely testifying in criminal prosecutions. See Dkt. No. 15 at ¶¶ 104(b);

(iv)  "Failing to supervise, train, instruct, and discipline police officers and encouraging their misconduct." See Dkt. No. 15 at ¶ 104(e);

(v)   Discouraging police officers from reporting the corrupt or unlawful acts of other police officers and/or retaliating against officers for so reporting.  See Dkt. No. 15 at ¶¶ 104(f)-(g);

15

(vi) Employing a disciplinary review process that is untimely and cursory that it tolerates the violation of person's rights. See Dkt. No. 15 at ¶ 105.

As an initial matter, as set forth in Points I and II, supra, plaintiff cannot demonstrate an underlying constitutional violation and, accordingly, his Monell claim fails on this basis alone.

Further, plaintiff has not identified any official City policy directing the false arrest of immigrants or anyone else for the purpose of using them as informants or for any other purpose, or of fabricating criminal court complaints, or reflecting any of the allegations set forth in the first amended complaint. Plaintiff, instead, appears to base his Monell claim on the theory that there is a widespread municipal practice of engaging in the aforementioned alleged acts. Plaintiff, however, cannot present any evidence tending to show that such practices exist. Instead, plaintiff cherry picks random unrelated litigations and reports, dating as far back as 1987, and media articles to support his claims. He cannot rely on either to defeat summary judgment. It is well settled that unadjudicated litigations are insufficient to establish that a widespread custom or practice exists. See, e.g., Tieman v. City of Newburgh, 13 Civ. 4178, U.S. Dist. LEXIS 38703, at *48-*50 (S.D.N.Y. Mar. 26, 2015) (finding plaintiff's citation to prior lawsuits "insufficient to plausibly support an inference of a widespread custom…[since] even if the civil complaints involved comparable conduct to that alleged here, none result[ed] in an adjudication of liability.") (internal citation omitted) (collecting cases). Similarly, news articles also do not suffice as evidence of a municipal policy/practice. See, e.g., Richardson v. Nassau County, 277 F. Supp. 2d 196, 204 (E.D.N.Y. 2003) (article insufficient to establish custom or policy). In the absence of any credible evidence of a policy or practice that caused a deprivation of plaintiff's constitutional rights, his Monell claim fails. See Morgan v. Nassau County, 03-CV-5109, 2009 U.S. Dist. LEXIS 79180, at *44 (E.D.N.Y. Sept. 2, 2009) (plaintiff could not solely rely on the allegations in his pleadings to defeat summary judgment).

16

Additionally, plaintiff may not establish municipal liability under the theory of deliberate indifference.  "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."  Connick v. Thompson, 131 S. Ct. 1350, 1360 (2011) (citing Board of Comm'rs of Bryan Cty. v. Brown, 520 U.S. 397, 410 (1997).  In order to demonstrate deliberate indifference, a plaintiff must "identify a specific deficiency in the city's training program and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation."  Wray v. City of New York, 490 F.3d 189, 196 (2d Cir. 2007) (internal citations omitted).  "[T]he mere fact that [an individual] was arrested, without more, does not show that the City's training program is inadequate."  Jenkins v. City of New York, 478 F.3d 76, 95 (2d Cir. 2007).  Here, plaintiff has not identified any specific deficiencies in the City's training at all, much less any deficiencies that purportedly caused the alleged constitutional violations and/or could be the bedrock of a deliberate indifference claim.  As such, plaintiff's purported Monell claim fails.

### POINT V

### PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED

Plaintiff alleges claims for false arrest, assault and battery, malicious prosecution, intentional and/or negligent infliction of emotional distress, negligence, and negligent hiring, training and supervision pursuant to New York State law.  As detailed below, plaintiff cannot maintain any causes of action predicated upon state law.

#### A.    Plaintiff's Malicious Prosecution Claim Is Time-Barred

Plaintiff's purported malicious prosecution claim must be dismissed because he failed to comply with the requirements of the New York's General Municipal Law.  New York's General Municipal Law §§ 50-e and 50-i requires that a plaintiff asserting state tort law claims against a

municipal entity or its employees acting in the scope of employment (1) file a notice of claim within ninety days after the incident giving rise to the claim, and (2) commence the action within a year and ninety days from the date on which the cause of action accrues.  N.Y. Gen. Mun. L. §§ 50-e and 50-i (Consol. 2001).  "A claim for malicious prosecution accrues upon favorable termination of the underlying criminal action."  Hone v. City of Oneonta, 157 A.D.3d 1030, 1032 (N.Y. App. Div. 3rd Dep't 2018); see also Guzman v. City of New York, 653 N.Y.S.2d 143, 144 (N.Y. App. Div. 2d Dep't 1997).  The notice of claim requirements are strictly construed, and a plaintiff's "failure to comply with the mandatory New York statutory notice-of-claim requirements generally results in dismissal of his claims."  Hyde v. Caputo, 98-CV-6772, 2001 U.S. Dist. LEXIS 6253, at *14 (E.D.N.Y. May 11, 2001) (internal citation omitted).

Here, the criminal prosecution against plaintiff was dismissed on or about July 28, 2021.  Accordingly, in order to allege a viable malicious prosecution claim pursuant to New York state law, plaintiff would have had to have filed a notice of claim by no later than October 26, 2021.  He did not do so.  The only notice of claim filed by plaintiff pertaining to the alleged underlying incident refers to his arrest and is dated June 8, 2021 – more than a month *before* the prosecution against him was dismissed.  Accordingly, the claim is time-barred.

### B.    Plaintiff's False Arrest and Assault and Battery Claims Fail Because There Was Probable Cause to Arrest

As set forth in Point I, probable cause is a defense to both federal and state law claims for false arrest.  Because there was probable cause to arrest plaintiff, he has no viable false arrest claim under state law.

Moreover, "[w]hen assault and battery claims are brought against law enforcement personnel who had probable cause to arrest, 'assault and battery claims under New York law parallel the Fourth Amendment standard governing the use of force incident to a lawful arrest.'"

Beach v. City of New York, 21 Civ. 06737, 2023 U.S. Dist. LEXIS 151922, at *16 (S.D.N.Y. Aug. 28, 2023) (quoting Rizk v. City of N.Y., 462 F. Supp. 3d 203, 228-29 (E.D.N.Y. 2020) ).  Further, "[d]ismissal of a battery claim is proper when probable cause for the arrest [exists] . . . absent any evidence that the force used to effect the arrest was excessive."  Id. at *16-*17 (finding that probable cause precluded any assault and battery claims where there was probable cause to arrest and the force used to effectuate the arrest was *de minimis*).  "A police officer's 'application of force is excessive, in violation of the Fourth Amendment, if it is objectively unreasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'"  Hamilton v. City of New York, 07-CV-3633, 2009 U.S. Dist. LEXIS 63432, at *27 (E.D.N.Y. July 23, 2009) (quoting Maxwell v. City of New York, 380 F.3d 106, 108 (2d Cir. 2004)).

Here, plaintiff's amended complaint is devoid of allegations suggesting that any force was used by any officer while taking plaintiff into custody and plaintiff made no such allegations during his deposition.  Because no force was used and there was probable cause for the arrest, plaintiff's assault and battery claims fail.

### C. Plaintiff's Claim for Intentional Infliction of Emotional Distress Should Be Dismissed

Plaintiff's claim for intentional infliction of emotional distress should be dismissed because public policy prohibits recovery for such claims against a governmental entity.  See Rivera v. City of New York, 392 F. Supp. 2d 644, 657 (S.D.N.Y. 2005) (citations omitted); Hazan v. City of New York, 98 Civ. 1716, 1999 U.S. Dist. LEXIS 10499, at *23 (S.D.N.Y. July 9, 1999).  Further, "[n]o intentional infliction of emotional distress claim will lie where the conduct underlying the claim falls within the ambit of traditional tort liability."  Morgan v. Nassau County, 2009 U.S. Dist. LEXIS 79180 at *61 (quoting Hansel v. Sheridan, 991 F. Supp. 69, 75 (N.D.N.Y. 1998).  Because

plaintiff has set forth claims for various torts, including false arrest and malicious prosecution, his intentional infliction of emotion distress claims should be dismissed.

Regardless of the foregoing, plaintiff's intentional infliction of emotional distress claim should also be dismissed on the merits.  To state a claim for intentional infliction of emotional distress, a plaintiff must satisfy the following four elements: (1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard for a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress.  Stuto v. Fleishman, 164 F.3d 820, 827 (2d Cir. 1999).  Here, at a minimum, plaintiff cannot satisfy the "extreme or outrageous conduct" element of the standard.

The extreme and outrageous conduct element is very strict and "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  Morgan v. Nassau County, 2009 U.S. Dist. Lexis 79180 at *60-61 (citations omitted).  Plaintiff's claim seems to be based on the alleged false arrest and/or malicious prosecution.  However, neither allegation is sufficient to support a claim for intentional infliction of emotional distress.  See, e.g., Brunson v. City of New York, 07-CV-2308, 2011 U.S. Dist. LEXIS 158924, at *40 (E.D.N.Y. Jan. 26, 2011) ("A lawful arrest cannot support a claim for intentional or negligent infliction of emotional distress.") (internal citation omitted); Kirk v. Metropolitan Transp. Authority, 99 Civ. 3787, 2001 U.S. Dist. LEXIS 2786, at *26 (S.D.N.Y. Mar. 14, 2001) (intentional infliction of emotional distress claim dismissed where plaintiff alleged that an officer falsely accused him of a crime and threatened him with prosecution).

### D.    Plaintiff Fails to State a Claim For Negligent Infliction of Emotional Distress

Similar to the abovementioned claim of intentional infliction of emotional distress, a cause of action for negligent infliction of emotional distress must be based on conduct that is "so extreme

in degree and outrageous in character as to go beyond all possible bounds of decency, so as to be regarded as atrocious and utterly intolerable in a civilized community." Wolkstein v. Morgenstern, 713 N.Y.S.2d 171, 172 (App. Div. 1st Dep't 2000) (citations omitted). "Whether the alleged conduct is outrageous is, in the first instance, a matter for the court to decide." Id. at 173. Moreover, courts generally hold that the circumstances in which a plaintiff may recover for negligent infliction of emotional distress are extremely limited. See, e.g., Hagie v. General Motors Corp., 98-CV-0634E(H), 1999 U.S. Dist. LEXIS 5227, at *16 (W.D.N.Y. 1999).

As set forth, infra, plaintiff's arrest was supported by probable cause, and therefore, cannot be said to be egregious or outrageous. However, even assuming, arguendo, that plaintiff could establish outrageous conduct, under New York law a plaintiff may only recover for negligent infliction of emotional distress under two theories: (1) the "bystander theory" or (2) the "direct duty" theory. Baker v. Dorfman, 239 F.3d 415, 421 (2d Cir. 2000); Wahlstrom v. Metro-North Commuter R.R., 89 F. Supp.2d 506, 530 (S.D.N.Y. 2000). Under the direct duty theory, a plaintiff must show "an emotional injury resulting from a breach of duty which unreasonably endangered plaintiff's own physical safety." See Mortise v. United States, 102 F.3d 693, 696 (2d Cir. 1996); De Rosa v. Michelman, 584 N.Y.S.2d 202, 203 (App. Div. 2d Dep't 1992). Further, the alleged duty "must be specific to the plaintiff, and not some amorphous, free-floating duty to society." Mortise, 102 F.3d at 696.

Here, plaintiff has not identified any special duty that existed between him and the defendants, nor has he alleged that a breach of said non-existing duty unreasonably endangered his physical safety. Plaintiff's allegations amount to nothing more than "amorphous, free-floating duties" owed to society generally and not specifically to him.

### E.    Plaintiff's Negligence Claims Fails As A Matter of Law

First, plaintiff has not identified any specific duty owed to him - as he must in order to set forth a viable negligence claim.  Moreover, "[a]s a matter of public policy a negligence claim arising out of an investigation or prosecution will not be recognized under New York law." Batson-Kirk v. City of New York, 07-CV-1950, 2009 U.S. Dist. LEXIS 44841, *34-35 (E.D.N.Y. May 28, 2009); see also Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994); Riddick v. City of New York, 21 Misc.3d 1138A (Sup. Ct. Bronx Co. 2004).  Therefore, any allegations that plaintiff was negligently arrested and/or prosecuted is not actionable and should be dismissed.

### F.    Plaintiff Does Not Have a Viable Negligent Hiring, Training and Supervision Claim

In order to state a viable claim for negligent training, supervision, hiring and/or retention, "in addition to the standard elements of negligence, a plaintiff must show…that the employer 'knew or should have known of the employee's propensity for the conduct which caused the injury' prior to the injury's occurrence."  Ehrens v. Lutheran Church, 385 F.3d 232, 235 (2d Cir. 2004) (quoting Kenneth R. v. Roman Catholic Diocese of Brooklyn, 229 A.D.2d 159 (2d Dept. 1997)). Additionally, "a claim for negligent hiring or supervision can only proceed against an employer for an employee acting outside the scope of [his] employment." Mena v. City of New York, 15 Civ. 3707, 2019 U.S. Dist. LEXIS 71752, at *15 (S.D.N.Y. Apr. 25, 2019) (quoting Perkins v. City of Rochester, 641 F.Supp.2d 168, 174-75 (W.D.N.Y. 2009)).

Here, as indicated above, plaintiff has not articulated any special duty owed to him by defendants.  Further, plaintiff has not adduced any evidence demonstrating that Officer Inoa had a propensity to falsely arrest and/or maliciously prosecute individuals and/or that the City was aware of any such propensity.  Additionally, plaintiff has not adduced any evidence showing that Officer Inoa was acting outside of his duties.  Moreover, based on a reading of the first amended complaint,

it is clear that plaintiff contends that Officer Inoa was acting within the scope of his duty at the time of the incident (see Dkt. Entry 15 at ¶¶ 31-34) – that alone is sufficient to defeat this claim. See, e.g., Soliman v. City of N.Y., 15-CV-5310, 2017 U.S. Dist. LEXIS 50599, at *35-36 (E.D.N.Y. Mar. 31, 2017) (finding that plaintiff's allegation that the defendant officers were acting within the scope of their duties was a sufficient basis alone to dismiss the negligent hiring and/or retention claim).  Accordingly, plaintiff's negligent hiring, training and supervision claim should be dismissed.

**POINT VI**

**PLAINTIFF'S REMAINING CLAIMS ARE NOT VIABLE**

Plaintiff also alleges claims for failure to intervene, violation of civil rights, and violation of § 1983.  None of these purported claims are viable.

First, an official may be liable for failure to intervene if a reasonable person in the officer's position would have known that the plaintiff's constitutional rights were being violated, had a realistic opportunity to intervene to prevent the harm, and did not take reasonable steps to do so. O'Neill v. Krzeminski, 839 F.2d 9, 11-12 (2d Cir. 1988); Jean-Laurent v. Wilkinson, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008).  Further, in order for such a claim to be viable, the plaintiff must have suffered an underlying constitutional violation.  Feinberg v. City of N.Y., 99 Civ. 12127, 2004 U.S. Dist. LEXIS 16098, at *12 (S.D.N.Y. Aug. 13, 2004).  Here, plaintiff cannot establish that his constitutional rights were violated.  Moreover, plaintiff has not articulated any actions demonstrating that Officer Inoa had a reasonable opportunity to intercede in an alleged constitutional violations and/or that he failed to take reasonable steps to do so.  Instead, plaintiff alleges that it was Officer Inoa that falsely arrested and maliciously prosecuted him – plaintiff cannot establish both that Officer Inoa is directly responsible for his alleged constitutional

23

deprivation and also failed to intervene to prevent it.  <u>Buchy v. City of White Plains</u>, 14 Civ. 1806, 2015 U.S. Dist. LEXIS 163469, at *7 (S.D.N.Y. Dec. 7, 2015) ("When a law enforcement officer is a direct participant in the allegedly [unconstitutional conduct], the failure to intervene theory of liability is inapplicable.") (internal quotation omitted).

Second, plaintiff's alleged claim for the violation of Section 1983 also fails since "Section 1983 'is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes.'"  <u>Cora v. Rennassace Mens Shelter</u>, 23-CV-9086, 2024 U.S. Dist. LEXIS 10999, at *3 (E.D.N.Y. Jan. 22, 2024) (quoting <u>Baker v. McCollan</u>, 443 U.S. 137, 144 n.3, 99 S. Ct. 2689, 61 L. Ed. 2d 433 (1979)).  To the extent that plaintiff simply regurgitates his claims for false arrest and malicious prosecution pursuant to the Fourth Amendment, the claims fails as set forth in Points I and II herein.  To the extent that plaintiff attempts to set forth a claim pursuant to the Fourteenth Amendment, such claim must be dismissed since plaintiff's false arrest and malicious prosecution claims are more properly brought under the Fourth Amendment.  <u>See</u> <u>Harris v. Binghamton Police Dep't</u>, 22-CV-977, 2023 U.S. Dist. LEXIS 199404, at *5 (N.D.N.Y. Nov. 7, 2023) ("because the Fourth Amendment of the Constitution provides an explicit textual source of constitutional protection against government misconduct in connection with an arrest, the Fourth Amendment—not the Fourteenth Amendment—governs his claim.") (citing <u>Albright v. Oliver</u>, 510 U.S. 266, 273 (1994)).

Third, plaintiff's "seventh cause of action for violation of civil rights" (<u>see</u> Dkt. Entry 15 at ¶¶ 65-74) also does not set forth an actionable claim and instead simply rehashes plaintiff's false arrest, malicious prosecution, and municipal liability claims and should be dismissed as duplicative, at the very least.

**<u>CONCLUSION</u>**

For the foregoing reasons, defendants respectfully request that the Court grant their motion for summary judgment, together with such costs, fees and other and further relief as the Court deems just and proper.

Dated:      New York, New York
            February 1, 2024

                              **HON. SYLVIA O. HINDS-RADIX**
                              Corporation Counsel of the City of New York
                              *Attorney for Defendants City of New York and*
                              *Hinolito Inoa*
                              100 Church Street
                              New York, New York 10007

                              _____
                              Qiana Smith-Williams

TO:      All Counsel of Record (Via E-Mail)