UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ABU SIDDIQUE,

                 Plaintiff,

        v.

CITY OF NEW YORK, OFFICER
HINOLITO INOA, and JOHN AND JANE
DOE OFFICERS AND DETECTIVES 1-10,
whose true identities are unknown, in their
individual and official capacity,

             Defendants.

**<u>MEMORANDUM & ORDER</u>**
22-CV-03807 (HG)

**HECTOR GONZALEZ,** United States District Judge:

      This is an odd case. In an attempt to root out an apparent problem of merchants reselling

stolen phones in Brooklyn, the NYPD carried out a so-called "fencing" operation on March 10,

2021. In the crosshairs of that operation landed a store managed by Plaintiff Abu Siddique, who

was approached by Defendant Hinolito Inoa, an undercover NYPD detective, trying to sell him a

"stolen" phone. The record in this case, even at summary judgment, is thin. We know as a

matter of fact just bits and pieces about what transpired between Plaintiff, Inoa, and another

officer working with Inoa. But eventually, Plaintiff bought the phone and was arrested by other

officers for possession of stolen property. The District Attorney later dismissed that charge.

      Plaintiff then sued Inoa, the City of New York, and several unidentified officers for,

among other things, violations of his civil rights under Section 1983. Now, Inoa and the City

move for summary judgment on Plaintiff's claims, with Inoa principally asserting a qualified

immunity defense. Plaintiff opposes their motion. For the reasons stated below, Defendants'

motion for summary judgment is GRANTED IN PART and DENIED IN PART.

## PROCEDURAL HISTORY

Plaintiff sued on June 28, 2022. *See* ECF No. 1 (Compl.). He later filed an amended

complaint on October 24, 2022. *See* ECF No. 15. On November 1, 2022, the Court entered a

scheduling order. *See* ECF No. 18. Defendants filed a pre-motion conference letter on July 14,

2023. *See* ECF No. 37. The bundled summary judgment motion was filed on April 1, 2024.[1]

## FACTUAL BACKGROUND[2]

On March 10, 2021, Inoa and his fellow officer Benjamin Rodriguez were assigned to the

79th Precinct and were addressing complaints of stores reselling stolen cellphones. ECF No. 49

¶ 1–2; ECF No. 47-2 at 61:4–7 (Inoa Dep. Tr.).[3] Their supervisor, Sergeant James Priore,

---

[1]    The motion papers consist of: ECF No. 44 (Defs.' Mot.); ECF No. 45 (Defs.' Mem. of Law); ECF No. 46 (Defs.' Rule 56.1 Statement); ECF No. 47 (Defs.' Exs.); ECF No. 48 (Pl.'s Opp.); ECF No. 49 (Pl.'s 56.1 Counterstatement); ECF No. 50 (Pl.'s Exs.); ECF No. 51 (Pl.'s Decl.); ECF No. 52 (Kane Decl.); ECF No. 53 (Defs.' Reply); ECF No. 54 (Defs.' 56.1 Counterstatement); ECF No. 55 (Defs.' Additional Exs.). Plaintiff seeks leave to file a sur-reply "to the extent Defendants raise new arguments not offered in their moving papers." ECF No. 48 at 30. The anticipatory and perfunctory motion necessarily fails to "demonstrate[] to the [C]ourt that papers to which [he] seeks to file a reply raise new issues which are material to the disposition of the question before the [C]ourt." *See SEC v. Xia*, No. 21-cv-5350, 2022 WL 2784871, at *1 (E.D.N.Y. July 15, 2022). Therefore, the motion for leave to file is denied.

[2]    The Court refers to the pages assigned by the Electronic Case Files system ("ECF"), except when quoting deposition transcripts, where the Court cites to the original page number on the native document. Unless otherwise indicated, when quoting cases, all internal quotation marks, alteration marks, emphases, footnotes, and citations are omitted.

The Court recites facts from the counterstatements to the Rule 56.1 statements to the extent those facts are undisputed by the parties and incorporates their references to the record where available. The Court notes that certain record citations in the Rule 56.1 statements are not in fact in the record, and where that is the case, the Court of course does not rely on them in this factual recitation. *See, e.g.*, ECF No. 54 ¶ 48 (citing to, *inter alia*, page 62 of the Siddique deposition transcript, which is not in the record).

[3]    Plaintiff claims this fact is disputed because "Defendants have not turned over any documents supporting the impetus for Inoa, Rodriguez and the team's assigned operation," pointing to discovery requests that Defendants apparently failed to fully respond to. *See* ECF No. 49 ¶ 2. That argument, which effectively seeks to litigate a discovery dispute, fails to

instructed them to try to sell a phone at two separate stores, in what is called a "fencing operation."[4]  ECF No. 49 ¶¶ 3–4.  Priore gave the phone to Inoa that he would use during the sting operation.  *Id.* ¶ 6.  Inoa did not know whether the phone was actually stolen and did not ask Priore about it.  *Id.* ¶ 7.  Rodriguez also did not know about the phone's origin.  *Id.* ¶ 8.

On the same day, Plaintiff was managing a store called Fix N Colors, which sells phones, accessories, and repair devices.  *Id.* ¶¶ 9–10.  Inoa, without Rodriguez, entered Fix N Colors wearing plain clothes.  *Id.* ¶¶ 11–12.  Inoa told Plaintiff that he had a problem with his girlfriend, needed money, and wanted to sell the phone.  *Id.* ¶ 17.  It is hotly disputed whether or not Inoa told Plaintiff that the phone was stolen.  *Id.* ¶ 18; ECF No. 54 ¶ 44.

Plaintiff took the phone from Inoa and inspected it, including by checking the phone's IMEI number.  ECF No. 49 ¶¶ 19–20; *see also* ECF No. 45 at 13.  An IMEI, or International Mobile Equipment Identity, number is a unique identifier which is used "to identify valid devices and can be used to stop a stolen phone from accessing a network."  *See* Tamar Levin, *What Is an IMEI Number and How Is It Used?*, AT&T, https://perma.cc/H9TQ-ALWB (last visited Mar. 31, 2025).  An IMEI check will produce a "hit" if the searched phone is stolen.  ECF No. 54 ¶ 49. There is one IMEI report in this case, dated just hours after Plaintiff's arrest, which does not indicate that the phone was stolen.  ECF No. 49 ¶ 21–22; *see also* ECF No. 47-5 at 2 (IMEI Report).  Then, Plaintiff asked Inoa for ID.  ECF No. 49 ¶ 23.  Inoa did not know why Plaintiff was asking for ID, and even though he had one, ECF No. 54 ¶¶ 70–71, he refused to provide it and walked out of the store, ECF No. 49 ¶ 24.

---

appropriately counter Defendants' statement because pursuant to the Local Rule 56.1(d) in effect at the time the summary judgment motion was filed, "each statement controverting any statement of material fact" needed to "be followed by citation to evidence which would be admissible."

[4]    "Fencing" refers to the sale of stolen goods.  *See United States v. Golomb*, 754 F. 2d 86, 88 (2d Cir. 1985).

A few minutes later, Inoa returned to Fix N Colors with Rodriguez. *Id.* ¶ 26; *see also* ECF No. 47-10 (Surveillance Video).[5]  Rodriguez, not Inoa, gave Plaintiff his driver's license and Plaintiff made a copy of it.  ECF No. 49 ¶ 27.  Plaintiff then purchased the phone for an amount that is also in dispute.  *Id.* ¶ 28.  Although Fix N Colors normally provided a receipt for every transaction, Plaintiff did not recall providing a receipt for this one.  *Id.* ¶ 29.  Then, Rodriguez used his radio to provide to his team a description of Plaintiff.  *Id.* ¶ 30.  Plaintiff was arrested by uniformed officers, *id.* ¶¶ 30–31; *see also* ECF No. 47-1 at 62:10–13 (Rodriguez Dep. Tr.), and charged with Criminal Possession of Stolen Property, ECF No. 49 ¶ 33.  That charge was ultimately dismissed on the basis of "insuff[icient] evid[ence]."  *See* ECF No. 47-9 at 2 (Criminal Court Record) (capitalization altered); *see also* ECF No. 45 at 11.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  The moving party has the burden of demonstrating that there is no genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  "Where the moving party demonstrates the absence of a genuine issue of material fact, the opposing party must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Brown v. Eli Lilly & Co.*, 654

---

[5]  Noting that the record contained a placeholder for a video without a video file, the Court ordered Defendants to provide it with a copy of the video.  *See* Mar. 18, 2025, Text Order.  The Court received the relevant video files on March 21, 2025.

F.3d 347, 358 (2d Cir. 2011).  When deciding a summary judgment motion, any ambiguities and inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party.  *LaFond v. Gen. Physics Servs. Corp.*, 50 F.3d 165, 171 (2d Cir. 1995).  "In reviewing the evidence and the inferences that may reasonably be drawn, [the Court] may not make credibility determinations or weigh the evidence. . . .  Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge."  *Proctor v. LeClaire*, 846 F.3d 597, 607–08 (2d Cir. 2017).

## DISCUSSION

### I.    Withdrawn and Non-Viable Claims

Plaintiff has explicitly withdrawn the first, second, sixth,[6] and tenth causes of action, respectively styled as claims for negligence; negligent hiring, training, and supervision; intentional infliction of emotional distress; and malicious prosecution.  ECF No. 48 at 6.  Defendants take no position as to the dismissal of these claims in Reply.  *See generally* ECF No. 53.  Those claims are therefore dismissed without prejudice pursuant to Rule 41(a)(2).  *See Hahn v. Bank of Am. Inc.*, No. 12-cv-4151, 2014 WL 1285421, at *11–12 (S.D.N.Y. Mar. 31, 2014) (explaining that this is the "preferred course" after defendant has filed a motion for summary judgment but the parties have not agreed to a stipulation of dismissal), *aff'd*, 607 F. App'x 55 (2d Cir. 2015).

Plaintiff's seventh and eighth causes of action, respectively styled as claims for "Violation of Civil Rights" and "Violation of 42 U.S.C. § 1983" must also be dismissed.  *See* ECF No. 48 at 6.  "Violation of Civil Rights" is not a standalone cause of action where, as here, it is not "distinct from Plaintiff's other claims."  *See McClean v. Cnty. of Westchester*, No. 17-

---

[6]       Plaintiff erroneously refers to this as his seventh cause of action.  *See* ECF No. 48 at 6.

cv-4492, 2018 WL 6329420, at *10 (S.D.N.Y. Dec. 3, 2018), *aff'd sub nom. McClean v. City of Mount Vernon*, 776 F. App'x 725 (2d Cir. 2019). It is therefore dismissed. *See Brandon v. City of New York*, 705 F. Supp. 2d 261, 268 (S.D.N.Y. 2010) (dismissing the same "catchall" claim because it was "indistinguishable from [plaintiff's] other, more specific claims," including false arrest). The same goes for Section 1983, as "there is no such thing as a standalone § 1983 claim untethered to a substantive right." *Boykin v. Westchester Cnty. Jail*, No. 22-cv-10513, 2024 WL 4252040, at *7 (S.D.N.Y. Sept. 20, 2024); *see also Albright v. Oliver*, 510 U.S. 266, 271 (1994) ("Section 1983 is not itself a source of substantive rights but merely provides a method for vindicating federal rights elsewhere conferred."). Accordingly, dismissal of this standalone claim is also required. *See Boykin*, 2024 WL 4252040, at *7.

Finally, unidentified John and Jane Doe Defendants remain in this case and must be dismissed. Plaintiff mentions these Defendants only once with respect to his failure to intervene claim, which he says he brings against "John Doe and Jane [O]fficer, like Rodriguez." ECF No. 48 at 28. He also suggests that Priore and "the officers involved in the fencing operation" are Defendants, too. *Id.* That makes no sense. Neither Rodriguez nor Priore are Doe Defendants because Plaintiff knows their identities. But Plaintiff never moved to amend the complaint to add them (or any other officers he may have identified) as Defendants. He does not appear to want to, and in any event, is not permitted to do so now. *See Lewis v. Lee*, 737 F. App'x 24, 29 (2d Cir. 2018) ("A party is not entitled to amend his complaint on summary judgment."). Furthermore, it is basic that a plaintiff may not purport to maintain suit against an unspecified number of unknown individuals merely by keeping Does in the case since a "plaintiff may not maintain claims against a John Doe defendant at trial." *See Carlberg v. Loschiavo*, No. 12-cv-00887, 2014 WL 5858153, at *3 (D. Conn. Nov. 12, 2014) (denying

amendment to name a John Doe defendant shortly before trial). Thus, the Court dismisses without prejudice the claims against the Doe Defendants. *See Pund v. St. Francis Coll.*, No. 23-cv-01498, 2024 WL 4145741, at *10 (E.D.N.Y. Sept. 11, 2024) (at summary judgment, dismissing unidentified John Does where they "were not difficult to identify through basic discovery tools" and collecting cases); *see also Cruz v. City of New York*, 232 F. Supp. 3d 438, 448 (S.D.N.Y. 2017) ("[W]here a plaintiff has had ample time to identify a John Doe defendant but gives no indication that he has made any efforts to discover the defendant's name, . . . the plaintiff simply cannot continue to maintain a suit against the John Doe defendant.").

In view of the foregoing, the third, fourth, fifth, and ninth causes of action, respectively styled as false arrest and false imprisonment, assault and battery, and failure to intervene, remain live, as does the municipal liability claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

## II.    Qualified Immunity

At the threshold, Inoa generally asserts that he is "entitled to qualified immunity." ECF No. 45 at 22. However, he explains only how it applies in the context of the false arrest and imprisonment[7] claim, not with respect to any other Section 1983 claims. *See id.* at 23–24. This is a problem because qualified immunity is evaluated on a claim-by-claim basis. *See, e.g.*, *Towns v. Stannard*, 431 F. Supp. 3d 44, 67 n.19 (N.D.N.Y. 2019) (finding that defendant failed

---

[7]    From now on, the Court will refer to this claim just as a false arrest claim, since there is no relevant distinction in this case between the two under either federal or state law. *See Hernandez v. United States*, 939 F.3d 191, 199 n.3 (2d Cir. 2019) ("Although false arrest and false imprisonment are sometimes treated as different torts, the Complaint asserts them as one claim, the parties treat them as one claim, and the elements are substantially the same."); *see also Adams v. City of Syracuse*, No. 21-cv-0650, 2022 WL 685286, at *4 n.2 (N.D.N.Y. Mar. 8, 2022) ("As in the federal context, there is no difference between a state law claim for false arrest and a state law claim for false imprisonment.").

to assert defense with respect to certain alleged conduct). In light of his failure to develop the qualified immunity argument with respect to any other Section 1983 claims, the Court finds that he has waived the qualified immunity defense with respect to those claims. *See McCardle v. Haddad*, 131 F.3d 43, 51 (2d Cir. 1997) ("The qualified immunity defense can be waived . . . by failure to raise it with sufficient particularity."); *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007) ("Because qualified immunity is an affirmative defense, it is incumbent upon the defendant to plead, and adequately develop, a qualified immunity defense during pretrial proceedings . . . .").

The Court now proceeds to qualified immunity, a defense for which Inoa carries the burden. *Guan v. City of New York*, 37 F.4th 797, 806 (2d Cir. 2022). As is well established, "[q]ualified immunity shields government officials from civil damages liability unless the official violated a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Reichle v. Howards*, 566 U.S. 658, 664 (2012). Here, the Court must consider "two questions: (1) whether the evidence, viewed in the light most favorable to the plaintiff, makes out a violation of a statutory or constitutional right, and (2) whether that right was clearly established at the time of the alleged violation." *Singh v. City of New York*, No. 23-24-cv, 2024 WL 319117, at *2 (2d Cir. Jan. 29, 2024) (quoting *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010)). At the time of Plaintiff's arrest, "[t]he right to be free from arrest without probable cause was clearly established." *Gonzalez v. City of Schenectady*, 728 F.3d 149, 157 (2d Cir. 2013).

"For a law enforcement arrest, police officers have probable cause to arrest when they reasonably believe that the person to be arrested has committed or is committing a crime." *Guan*, 37 F.4th at 805. On the merits, the existence of probable cause "is a complete defense to a

false arrest claim." *Id.* at 804.  But "[e]ven where actual probable cause does not exist, police

officers may be entitled to qualified immunity from a § 1983 false arrest claim if their actions did

not violate clearly established rights or if arguable probable cause existed at the time of the

arrest." *Id.* at 806.  A police officer's conduct meets the standard for arguable probable cause "if

either (a) it was objectively reasonable for the officer to believe that probable cause existed, or

(b) officers of reasonable competence could disagree on whether the probable cause test was

met." *Id.*  To determine whether arguable probable cause exists, the Court looks at "the

objective reasonableness of the[] [officer]'s chosen course of action given the circumstances

confronting [him] at the scene." *Singh*, 2024 WL 319117, at *3.  Even though the test for

arguable probable cause is protective of law enforcement, *see Guan*, 37 F.4th at 806, in the

summary judgment posture, "an arresting officer is entitled to qualified immunity as a matter of

law only if the *undisputed facts* and all permissible inferences favorable to the plaintiff show that

officers of reasonable competence could disagree on whether the probable cause test was met,"

*Singh*, 2024 WL 319117, at *3 (emphasis in original); *see also Thomas v. Roach*, 165 F.3d 137,

143 (2d Cir. 1999) ("Summary judgment on qualified immunity grounds is not appropriate when

there are facts in dispute that are material to a determination of reasonableness.").

 In this case, it is undisputed that Plaintiff was arrested for criminal possession of stolen

property in the fifth degree pursuant to New York Penal Law § 165.40.  *See* ECF No. 49 ¶ 33;

ECF No. 50-4 (Complaint Room Screening Sheet).  For the state to convict Plaintiff for this

crime, he must have "knowingly possesse[d] stolen property."  N.Y. Penal Law § 165.40.  That

knowledge "may be shown circumstantially, such as by evidence of recent exclusive possession,

defendant's conduct or contradictory statements from which guilt may be inferred."  *People v.

Zorcik*, 67 N.Y.2d 670, 675 (N.Y. App. Div. 1986).  Therefore, in this context, the Court agrees

with Inoa that "what is of consequence is not the status of the property, but rather the state of mind of the individual attempting to come into possession of goods." ECF No. 45 at 16.

In view of the above, the dispositive question here is whether, at a minimum, reasonable officers could have disagreed about whether there was probable cause to believe that Plaintiff knew the phone he bought from Inoa was stolen. *See Guan*, 37 F.4th at 806. The problem for Inoa, though, is that that assessment must be made only on "*undisputed facts*." *Singh*, 2024 WL 319117, at *3 (emphasis in original). And there are not many of those in this small record. Indeed, Inoa's own description of why he is entitled to qualified immunity touches upon several areas in dispute:

> [I]t was not clearly established that Officer Inoa could not arrest plaintiff for attempted criminal possession of stolen property where, even if [P]laintiff was not advised that the phone was stolen, the overwhelming circumstances of the sale were conspicuous and plaintiff as a merchandise reseller did not take reasonable steps to verify the officer's legal right to possess the phone before purchasing it.

ECF No. 45 at 24. In particular, the facts in dispute relate to explicit and implicit indicia which, Inoa claims, are sufficient to establish that there was arguable probable cause to believe that Plaintiff knew that he was coming into possession of a stolen phone. *See* ECF No. 45 at 17. But these assertions are either insufficiently supported by undisputed facts or do not provide adequate support for an inference regarding Plaintiff's knowledge. The Court begins with a threshold issue regarding liability for false arrest, and then proceeds to Inoa's arguments.

### A.    Personal Involvement

One issue that jumps off the page in this case is hardly addressed by the parties: that Plaintiff seeks to continue with a false arrest claim against Inoa, an officer who did not arrest him by taking him into custody. *See* ECF No. 47-7 at 4 (NYPD database information naming non-defendant arresting officer). Notably, Inoa never argues that he can escape liability—either on the merits or under qualified immunity—on the basis that he did not "personally participate[] in

the events that constitute the basis for the alleged probable cause." *Bianco v. Cnty. of Nassau*, No. 16-cv-444, 2018 WL 1175157, at *7 (E.D.N.Y. Mar. 6, 2018). As a categorical matter, he would be foreclosed from making such an argument, since "a police officer can only be liable for a false arrest that occurs outside of his presence if he had reason to know that such a false arrest was likely to occur." *See Escalera v. Lunn*, 361 F.3d 737, 748 n.4 (2d Cir. 2004). And he would have difficulty making that argument on the facts of this case, since it is undisputed that Plaintiff's arrest resulted from Inoa's principal role in a sting operation, which is, by design, intended to lead to an arrest. Specifically as it relates to the below analysis, in the absence of any argument from Inoa on this point, *see* ECF No. 45 at 28–29, the Court sees no reason to depart from the relevant qualified immunity test in a case involving allegations of false arrest against a non-arresting officer, which also appears to be most consistent with Second Circuit precedent. *See Escalera*, 361 F.3d at 748 n.4 (explaining that if the arresting officer was protected by qualified immunity, then so was the officer not present but also alleged to be involved).

### B. Explicit Indicia

The most central disputed issue in this case is whether Inoa told Plaintiff the phone was stolen. On this, the parties take diametrically opposed views. Although it is undisputed that Inoa told Plaintiff that he had a problem with his girlfriend, needed money, and wanted to sell the phone, ECF No. 49 ¶ 17, Plaintiff provided sworn testimony denying that Inoa said the phone was stolen, ECF No. 50-1 at 46:13–47:1. For his part, Inoa provided sworn testimony stating that he told Plaintiff that he stole the phone from his girlfriend. ECF No. 47-2 at 83:18–20. And the excerpt of Rodriguez's testimony is equivocal on this question. *See* ECF No. 47-1 at 46:2–25. To be sure, Inoa attacks Plaintiff's testimony as "self-serving," ECF No. 45 at 17, but this is simply not the kind of case involving "speculative, and subjective, testimony" that cannot be

squared with other "hard evidence" in the record, *see Deebs v. Alstom Transp., Inc.*, 346 F. App'x 654, 656 (2d Cir. 2009). After all, all Inoa does is point to his own testimony, but "no party's testimony should be assumed to be more self-serving than another's." *Cintron v. Albert Einstein Coll. of Med.*, No. 21-cv-06256, 2022 WL 3137079, at *2 (S.D.N.Y. Aug. 5, 2022). In sum, "[t]he conflicting testimony, without more, makes this the textbook definition of a disputed issue" requiring resolution by a jury, *id.*, and there is no undisputed fact on which the Court could determine as a matter of law that there was arguable probable cause.

        C.    *Implicit Indicia*

Perhaps in recognition of the above issue, Inoa suggests that a number of implicit factors allowed him to reasonably conclude that Plaintiff knew that he was coming into possession of stolen property by buying the phone. *See* ECF No. 45 at 17. Notably, Inoa cites no case in which a court granted summary judgment on qualified immunity grounds based on similar evidence in the context of a false arrest claim. That is not surprising, because "[t]he Second Circuit has repeatedly held that disputed material issues regarding the reasonableness of an officer's perception of the facts (whether mistaken or not) are the province of the jury." *McCrae v. Town of Brookhaven*, No. 18-cv-07061, 2024 WL 5120016, at *8 (E.D.N.Y. Dec. 16, 2024); *see also Green v. City of New York*, 465 F.3d 65, 83 (2d Cir. 2006) ("*Green I*") ("If there is a material question of fact as to the relevant surrounding circumstances, the question of objective reasonableness is for the jury."). And as explained further below, this case demonstrates why a defendant seeking to rely on such evidence, which is readily subject to dispute, faces an uphill

battle in proving as a matter of law that "it was objectively reasonable for the officer to conclude that probable cause existed." *Jenkins v. City of New York*, 478 F.3d 76, 87 (2d Cir. 2007).

First, Inoa says that "prior to entering Fix N Colors, [he] was aware that local businesses were purchasing and reselling stolen cell phones." ECF No. 45 at 17. Okay. Even taking that as true, it says nothing about whether it was objectively reasonable to conclude that *this* Plaintiff knew *this* phone was stolen. *See Jenkins*, 478 F.3d at 90 ("It has long been established . . . that when [a description of an assailant] could have applied to any number of persons and does not single out the person arrested, probable cause does not exist.").

Second, Inoa says that "upon entering [the] store, [he] advised [P]laintiff that he had stolen the cell phone from his girlfriend and needed money." ECF No. 45 at 17. Setting aside the disputed fact of whether Inoa said the phone was stolen, the mere fact that he "needed money" does not bear on the arguable probable cause inquiry. That rationale would apply to the sale of anything everywhere.

Third, Inoa says that by "pacing around the store, making strange hand gestures, speaking to himself, and generally behaving oddly in view of [P]laintiff," he conveyed to Plaintiff that he was selling stolen property. *Id.* How? Inoa's own description of this evidence invites the Court to view the video and draw a two-tiered conclusive inference in his favor: agreeing with his interpretation of the evidence and, based on that, finding that he could have reasonably concluded that Plaintiff would have known the phone was stolen based on his behavior. But those are issues for the factfinder, not this Court, to resolve. *See Gallo v. Prudential Resol. Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994) (at summary judgment, the district court's "duty, in short, is confined . . . to issue-finding; it does not extend to issue-resolution"). That is

especially true here, where the Court has actually reviewed the video, which is far from "so conclusive that summary judgment is warranted."  *Singh*, 2024 WL 319117, at *6.

Fourth, Inoa argues that he reasonably concluded that Plaintiff knew he was purchasing stolen property because "[P]laintiff only paid $150.00 for an iPhone 11 – this particular iPhone model only having been released in September 2019, less than two years before the incident." ECF No. 45 at 17.  There are a few problems with that argument.  First, there is a factual dispute about the price of the phone.  Inoa says that he paid $150, pointing to the total of the various bills of different denominations invoiced by the police after his arrest.  *See* ECF No. 49 ¶ 28 (citing ECF No. 47-6 at 2).  But Inoa himself also points to deposition testimony in which Plaintiff testified that he paid $300 for the phone.  *See id.* (citing ECF No. 47-4 at 105:16–18).  Second, even assuming that Plaintiff bought the phone for $150, there is no evidence in the record to suggest that price should have—or actually did—set off a red flag for Plaintiff.  Inoa's only evidence to benchmark the price of the phone comes from a website, not record material.  *See* ECF No. 45 at 17 n.2.  And without a motion to supplement the record, the Court will not consider it.  *See Vanguard Dealer Servs., LLC v. Bottom Line Driven, LLC*, No. 21-cv-00659, 2024 WL 98420, at *8–9 (D. Conn. Jan. 8, 2024) (collecting cases).  Finally, as just explained, accepting Plaintiff's argument would require the Court to draw an impermissible inference in Inoa's favor about his perception of Plaintiff's own perception of the sale price.  *See Guan*, 37 F.4th at 804.  That would include making an improper credibility determination about Plaintiff's testimony that he might accept a phone at a low price because a seller might require cash quickly, and that a sale at a low price would not necessarily raise a red flag for him because he checks the IMEI and also confirms that there is no password or other iCloud account information tied to it that would suggest the phone belongs to someone else.  *See* ECF No. 50-1 at 122:3–14.

14

Fifth, Inoa's "refusal to provide identification" is not a sufficient basis for summarily concluding that a reasonable officer could have concluded that Plaintiff knew that he was coming into possession of stolen property. ECF No. 45 at 17. Here, the parties dispute whether, based on their differing views of Plaintiff's testimony, refusal to produce ID would raise suspicion that a phone was stolen. ECF No. 49 ¶ 25. Setting that aside, as discussed, the key issue here is Inoa's belief about what Plaintiff knew. Had Inoa refused to provide ID as a way of indicating to Plaintiff that the phone was stolen, this could provide support for his belief that Plaintiff knew that the phone was stolen. But in this case, it is undisputed that Inoa's refusal to provide ID was apparently not part of the sting. Rather, he testified: "I don't give my personal ID to people when I don't know him[,] to give him my information." ECF No. 47-2 at 88:11–12. As such, there is no indication in the record that Inoa (or anyone) was aware that this refusal would give Plaintiff the impression that the phone was stolen, so it does not logically support a belief about Plaintiff's mental state. *See Sanchez v. Melendrez*, 934 F. Supp. 2d 1325, 1333 (D.N.M. 2013) (noting that an officer's "knowledge of the operation is relevant to the probable cause calculus" because it informs if actions by a suspect "suggest[] intent to steal"). And, critically, this evidence arguably cuts against Inoa. Plaintiff went through with the sale only once Rodriguez eventually provided ID and Plaintiff had a chance to copy it, ECF No. 49 ¶¶ 27–28, which is consistent with Plaintiff's testimony that the store's "practice is if someone [doesn't] provide the ID, we don't buy the phone," ECF No. 50-1 at 84:8–10. Even if Inoa argues that Plaintiff should have known from experience that refusal to provide identification is evidence of possession of stolen property, that requires yet another credibility assessment inappropriate at summary judgment. *See McCrae*, 2024 WL 5120016, at *7 (rejecting qualified immunity on false arrest claim where "after being presented with two pieces of evidence that [Plaintiff] lived in the

residence, a trier of fact could fairly determine that a reasonable officer lacked probable cause to immediately arrest him for trespass without conducting any further investigation").

Finally, Inoa argues that an officer could have reasonably concluded that Plaintiff knew the phone was stolen because Plaintiff did not provide Inoa with a receipt after the sale.  ECF No. 45 at 17.  Defendants fail to explicate this point.  For reasons similar to those just discussed, there is no indication in the record that Officer Inoa (or any person, for that matter) was at all aware that "it was the practice of Fix N Colors to provide a receipt for every transaction," and could therefore take the failure to provide a receipt as an indication of Plaintiff's knowledge about the phone's status.  *See* ECF No. 49 ¶ 29.

As the above analysis makes clear, there are few undisputed facts in this case, and of those that are undisputed, they are of little to no relevance in determining whether a reasonable officer could have concluded that there was probable cause in this situation.  *See Guan*, 37 F.4th at 806.  Much remains unknown in this case, but what is undisputed is that Inoa walked into Plaintiff's store, looked around, and told Plaintiff he was having issues with his girlfriend, needed money, and wanted to sell a phone.  After Inoa wouldn't show Plaintiff an ID, Plaintiff declined to buy the phone.  Only after another officer provided Plaintiff with ID, which he made a record of, did he complete the sale.  In the Court's view, on these few undisputed facts "evaluated on the totality of the circumstances," "officers of reasonable competence would have to agree that the information possessed by the officer at the time of arrest did not add up to probable cause" to arrest Plaintiff for possession of stolen property.  *See Jenkins*, 478 F.3d at 87, 90.  After all, "'arguable' probable cause should not be misunderstood to mean 'almost' probable cause," as Inoa's argument here seems to suggest.  *Id.* at 87.

D.    *Reasonable Inquiry*

Under New York law, a "person in the business of buying, selling or otherwise dealing in property who possesses stolen property is presumed to know that such property was stolen if he obtained it without having ascertained by reasonable inquiry that the person from whom he obtained it had a legal right to possess it."  N.Y. Penal Law § 165.55.  Inoa references this provision, but it is confusing without any connection to the qualified immunity or probable cause analysis.  *See* ECF No. 45 at 16.  Section 165.55 creates a presumption at a criminal trial; it is irrelevant to whether reasonable officers could have disagreed about whether probable cause existed in this case.  *Cf. Rarick v. DeFrancesco*, 94 F. Supp. 2d 279, 289 n.9 (N.D.N.Y. 2000) (concluding that the Section 165.55 presumption "is not applicable . . . because there is no evidence in the record to indicate that either Defendant . . . knew of, let alone relied upon, this presumption when they decided to arrest Plaintiff").  Plus, even if Section 165.55 was relevant, it would likely make no difference here because Plaintiff undertook at least some inquiry by running the phone's IMEI number before purchasing it.  ECF No. 54 ¶ 48.[8]  On the facts in this underdeveloped record, the Court rejects Inoa's claim to qualified immunity with respect to the false arrest claim.

## III.    Merits

Having resolved the threshold question concerning the application of qualified immunity to the false arrest claim, the Court now proceeds to Defendants' substantive arguments for dismissal of the remaining claims.

---

[8]    Inoa also argues that "[i]t is no defense to assert that a charge for violation of § 165.55 is invalid because the property in question was not indeed stolen and so the charged individual is innocent."  ECF No. 45 at 16 (citing N.Y. Penal Law § 110.10).  Plaintiff does not make that argument here and, again, Inoa does not connect this provision to the qualified immunity or probable cause analysis.  *See id.*

### A.    False Arrest

Plaintiff alleges false arrest pursuant to Section 1983 and as a state claim.[9]  Federal claims for false arrest brought under Section 1983 are "substantially the same as claims for false arrest under state law."  *Ashley v. City of New York*, 992 F.3d 128, 136 (2d Cir. 2021).  On a false arrest claim, "a plaintiff must show that (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged."  *Id.*  As previously mentioned, the existence of probable cause always defeats a false arrest claim.  *Guan*, 37 F.4th at 804.  Here, Inoa says that this claim must be dismissed because there was probable cause.  ECF No. 45 at 16.  But because the Court has already found that, based on the undisputed facts, there was no arguable probable cause for the arrest, it follows that the Court cannot grant summary judgment under the more demanding probable cause standard.  *Cf. Stansbury v. Wertman*, 721 F.3d 84, 89 n.3 (2d. Cir. 2013) ("If an officer had probable cause, he or she also had arguable probable cause . . . .").  For the avoidance of doubt, the federal claim may proceed against only Inoa, since the City may not be vicariously liable for his actions under that statute, but the state claim, for which vicarious liability is available, may proceed against both Inoa and the City.  *See Graham v. City of New York*, 928 F. Supp. 2d 610, 626 (E.D.N.Y. 2013) (collecting cases).

### B.    Assault and Battery

When it comes to assault and battery, Plaintiff's claim is again imprecise, although the Court, like Defendants, understands him to assert this claim as both an excessive force claim

---

[9]      Plaintiff's own briefing is no model of clarity on this point and appears to miss any distinction between a federal and state false arrest claim.  *See* ECF No. 48 at 28–29 (listing "Section 1983 Claims" under "State Claims").  Nevertheless, Defendants appear to understand Plaintiff to assert both varieties.  *See* ECF No. 45 at 28.  In view of the apparent consensus on this issue, and the Court's holding, both claims may proceed.

under Section 1983 and a state law assault and battery claim. *See* ECF No. 45 at 28–29

(referencing excessive force); ECF No. 15 ¶ 65 (describing the assault and battery claim as a

civil rights violation). However, here, the lack of nuance on this issue is consequential. To the

extent that Plaintiff is indeed attempting to assert a federal excessive force claim, it must fail. "A

police officer's use of force is excessive if it is objectively unreasonable in light of the facts and

circumstances confronting them, without regard to their underlying intent or motivation." *Kayo*

*v. Mertz*, 531 F. Supp. 3d 774, 796 (S.D.N.Y. 2021). In this case, the Court basically agrees with

Defendants that there are neither allegations nor evidence that "any force was used by any officer

while taking [P]laintiff into custody." ECF No. 45 at 29.[10] Indeed, Plaintiff does not even

dispute that the one officer defendant—Inoa—did not use any force against him because another

officer actually arrested him. Thus, even though Plaintiff is able to maintain the federal false

arrest claim, dismissal of the federal excessive force claim is appropriate. *See Kayo*, 531 F.

Supp. 3d at 796–97 ("Because the § 1983 excessive force and false arrest factual inquiries are

distinct, establishing a lack of probable cause to make an arrest does not establish an excessive

force claim . . . .").

    A different outcome, however, is required for the state assault and battery claim. "New

York law is different on this point" because "[a]bsent a warrant or probable cause, *any* use of

force to effect an unlawful arrest can give rise to" an assault and battery claim. *See id.* at 797

n.12 (emphasis in original) (collecting cases). Because the false arrest claim is proceeding

against Inoa, the state assault and battery claim should therefore also proceed. *See Chimelis v.*

*Cnty. of Suffolk*, No. 21-cv-7079, 2025 WL 458242, at *8 (E.D.N.Y. Feb. 11, 2025) (allowing

---

[10]    Of course, any arrest involves some level of "force" in the literal sense, but "some degree
of physical coercion" as part of an arrest is legal. *Kayo*, 531 F. Supp. 3d at 797.

state assault and battery claim to proceed past summary judgment where probable cause for the underlying arrest was disputed). And, as previously explained, it may proceed against both Inoa and the City on a theory of vicarious liability. *See Graham*, 928 F. Supp. 2d at 626.

C.    *Failure to Intervene*

A plaintiff may seek to hold an officer liable for "failure to intervene"[11] where he "demonstrate[s] that the officer's failure to intervene 'permitted fellow officers to violate' the plaintiff's 'clearly established statutory or constitutional rights,' and that it was 'objectively unreasonable . . . to believe that his fellow officers' conduct did not violate those rights.'" *Martinez v. City of New York*, 564 F. Supp. 3d 88, 106 (E.D.N.Y. 2021) (quoting *Ricciuti v. N.Y.C. Transit Auth.*, 124 F.3d 123, 129 (2d Cir. 1997)). As stated earlier, Plaintiff apparently seeks to maintain this claim against a variety of non-Defendants, all of whom have now been dismissed. *See supra* § I. Now, in Opposition, Plaintiff states explicitly that he seeks to maintain the failure to intervene claim "in the alternative" to the underlying claims just discussed. *See* ECF No. 48 at 29. To be sure, there is some authority for that proposition. *See Cumberbatch v. Port Auth. of New York & New Jersey*, No. 03-cv-749, 2006 WL 3543670, at *11 (S.D.N.Y. Dec. 5, 2006) (explaining that because failure to intervene claims "cannot logically be pled against the same Defendants simultaneously with" the underlying claims, construing them as "ple[d] in the alternative" on the theory that "the [Defendant] Officers either

---

[11]    Although Plaintiff describes failure to intervene as a "State Claim," he provides no authority suggesting that such a claim should be treated differently from the federal variety. ECF No. 48 at 28–29. Assuming that such a claim is even cognizable under New York law, *see Lichy v. Cnty. of Cattaraugus*, No. 23-cv-1272, No. 23-cv-1272, 2024 WL 5355586, at *21 (W.D.N.Y. Aug. 8, 2024), *report and recommendation adopted*, 2025 WL 277468 (W.D.N.Y. Jan. 23, 2025), it would be coextensive with Section 1983, and therefore also fail for the reason explained below, *see Santiago v. City of Yonkers*, No. 21-cv-764, 2023 WL 2648649, at *11 n.13 (S.D.N.Y. Mar. 27, 2023).

used excessive force, or one or both of them failed to intervene while another [unidentified] officer used excessive force"). But in this case, if the jury agrees that Inoa lacked probable cause to arrest Plaintiff and therefore committed a false arrest (or perhaps committed assault[12]), then Inoa "[was] a direct participant in the allegedly unlawful conduct, [and] the failure to intervene theory is inapplicable." *Folk v. City of New York*, 243 F. Supp. 3d 363, 376 (E.D.N.Y. 2017); *accord Simon v. City of New York*, No. 09-cv-1302, 2011 WL 317975, at *12 (E.D.N.Y. Jan. 3, 2011), *report and recommendation adopted*, 2011 WL 344757 (E.D.N.Y. Feb. 1, 2011).[13] On the other hand, if the jury finds that Inoa had probable cause to arrest Plaintiff, then the arrest was legal, and Inoa cannot be liable for failing to have intervened in it. *See Martinez*, 564 F. Supp. 3d at 106–07 ("Because a plaintiff may recover on a failure to intervene theory only by showing that the purported failure led to the denial of clearly established statutory or constitutional rights, a failure to intervene claim is contingent upon the disposition of the underlying primary claims."). Therefore, Inoa is granted summary judgment on this claim.[14]

---

[12]    It is unclear whether a federal failure to intervene claim could stand only on a theory that a defendant officer failed to intervene in a violation of state law (here, assault and battery). That seems unlikely because the language "clearly established statutory or constitutional rights" in the context of failure to intervene borrows from the qualified immunity doctrine, *see Riccitui*, 124 F.3d at 129, and qualified immunity "is not generally understood to protect officials from claims based on state law," *Negron v. City of New York*, 976 F. Supp. 2d 360, 372 (E.D.N.Y. 2013). That said, even if the federal (or state) failure to intervene claim could proceed based on assault and battery, the same rationale provided here would disallow the failure to intervene claim with respect to Inoa, since Plaintiff also seeks to hold Inoa directly liable for assault and battery, and, as previously explained, the viability of that claim depends on the legality of the arrest, which itself turns on the existence of probable cause.

[13]    Again, it is worth emphasizing that Inoa does not contest that he was a direct participant in the arrest, so the dispositive issue for both the false arrest and derivative failure to intervene claim is the existence of probable cause. *See supra* § II.A.

[14]    Although Plaintiff does not even mention the City as a Defendant with respect to the failure to intervene claim in Opposition, a theory that *the City* failed to intervene in either Plaintiff's alleged assault and battery or, for that matter, false arrest, would not work. *See*

D.      Monell *Liability*

Pursuant to *Monell*, "[l]iability under section 1983 is imposed on the municipality when it has promulgated a custom or policy that violates federal law and, pursuant to that policy, a municipal actor has tortiously injured the plaintiff." *Askins v. Doe No. 1*, 727 F.3d 248, 253 (2d Cir. 2013). Contrary to the styling of the Amended Complaint, "*Monell* does not create a stand-alone cause of action under which a plaintiff may sue over a governmental policy, regardless of whether he suffered the infliction of a tort resulting from that policy." *Id.* In this case, Plaintiff states that the NYPD has a custom of "falsely arresting known innocent persons without probable cause" and that the City "fail[ed] to properly train its employees despite having notice that these constitutional violations were prevalent." ECF No. 48 at 23. The City moves for summary judgment, asserting that there is no evidence to support his false arrest theory of *Monell* liability. *See* ECF No. 45 at 26. I agree.

To establish a municipal custom or practice, "a general and conclusory allegation of a municipal policy or custom" is insufficient. *Green v. Dep't of Educ.*, 16 F.4th 1070, 1077 (2d Cir. 2021). Rather, Plaintiff must identify "a pattern of misconduct" to which the municipality does not respond, "compelling the conclusion that the local government has acquiesced in or tacitly authorized" such misconduct. *Astacio v. City of New York*, No. 23-7598, 2025 WL 80069, at *2 (2d Cir. Jan. 13, 2025). The Second Circuit has explained that "an official municipal policy or custom includes . . . 'practices so persistent and widespread as to practically have the force of law.'" *Okongwu v. Cnty. of Erie*, No. 21-1025, 2022 WL 6585217, at *1 (2d Cir. Oct. 7, 2022) (quoting *Lucente v. Cnty. of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020)). Here,

---

*Martinez*, 564 F. Supp. 3d at 107 (failure to intervene claims "typically apply to individual officers"); *see also Levy v. City of New York*, 935 F. Supp. 2d 575, 594 (E.D.N.Y. 2013) ("An officer who fails to intervene is liable for the preventable harm caused by other officers . . . .").

in support of his *Monell* claim, Plaintiff points primarily to three sources of evidence: "*adjudicated* matters" described in the Amended Complaint; a declaration by Amadou Kane, another local merchant who alleges that he was targeted by a similar fencing operation; and third-party accounts reporting on incidents similar (to different degrees) to those alleged here. ECF No. 48 at 23 (emphasis in original).  I address each in turn.

### i.    Amended Complaint

Plaintiff first points to the Amended Complaint, writing that it "lists several adjudicated instances where police officers falsified evidence to effectuate an arrest or effectuated an arrest where no probable cause existed, as well as a pattern of impunity regarding officers offering perjured testimony."  ECF No. 48 at 23 (citing ECF No. 15 ¶ 106).[15]  There are two problems with that argument.  The first is that it frames his *Monell* claim at far too high a level of generality.  The referenced portion of the Amended Complaint reads like a list of grievances about the NYPD spanning vastly different temporal and factual contexts.  *See, e.g.*, ECF No. 15 ¶ 106m (summarizing case from 2004 involving allegations of "peaceful anti-war protestors arrested without probable cause" and targeted due to their political beliefs).  The other evidence cited in the Amended Complaint takes the same tact.  *See id.* ¶ 107.  But the Supreme Court has made very clear that this grab-bag approach reliant on "loose language" about the nature of the municipal policy is impermissible:  "The fact that a municipal 'policy' might lead to 'police misconduct' is hardly sufficient to satisfy *Monell*'s requirement that the particular policy be the

---

[15]    Normally, a party "cannot defeat the motion by relying on the allegations in his pleading" or "on conclusory statements."  *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996). Rather, he "must offer some hard evidence."  *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998).  Here, because Plaintiff's references to the Amended Complaint go to other lawsuits, the Court has a basis to evaluate them.  The same cannot be said, however, for the other material in the Amended Complaint, such as quotes from NYPD members, *see* ECF No. 15 ¶ 107, which is not "in a form that would be admissible in evidence," Fed. R. Civ. P. 56(c)(2).

'moving force' behind a *constitutional* violation." *City of Okla. City v. Tuttle*, 471 U.S. 808, 824 n.8 (1985) (emphasis in original). The Second Circuit has similarly rejected Plaintiff's approach. *See Jean-Laurent v. Wilkerson*, 461 F. App'x 18, 22–23 (2d Cir. 2012) ("[Plaintiff]'s citation to various lawsuits involving inmate claims for the excessive use of force is not probative of the existence of an underlying policy that could be relevant here."). Plaintiff's own concession in Opposition that his *Monell* claim is "clouded in mystery" underlines this imprecision. ECF No. 48 at 23. Indeed, his references to "falsified evidence" and "perjured testimony" clearly have nothing to do with this case. *Id.*

Second, although courts in the Second Circuit have approved the use of "complaints in other cases that contain similar allegations" as supportive of "*de facto* customs or policies," those complaints "must involve factually similar misconduct, be contemporaneous to the misconduct at issue in the plaintiff's case, and result in an adjudication of liability." *Buari v. City of New York*, 530 F. Supp. 3d 356, 398–99 (S.D.N.Y. 2021). From the little information that can be gleaned from the lawsuits cited in the Amended Complaint, none of them are contemporary. Indeed, some have case numbers dating back to 1987, 1989, and 1993, and the most recent one appears to have been filed in 2010, 11 years before Plaintiff was arrested. *See* ECF No. 15 ¶¶ 106a, u, v, w. Like others, this Court rejects this approach of listing a "litany of other police-misconduct cases" without a clear connection to the practice or custom he claims exists in this case. *See, e.g.*, *Collins v. City of New York*, 923 F. Supp. 2d 462, 479 (E.D.N.Y. 2013); *Williams v. Fryermuth*, No. 23-cv-2156, 2024 WL 4557444, at *6 (S.D.N.Y. Oct. 23, 2024) ("Plaintiff has failed to plead sufficient detail about these prior suits. The Court therefore

cannot ascertain, from the pleadings, whether the alleged conduct resembles the alleged sexual

assault here and whether such conduct was widespread.").

        ii.        <u>Kane Declaration</u>

Next, Plaintiff points to the Kane Declaration. *See* ECF No. 48 at 24–25. There, Kane

states that he has owned a cell phone store located near Plaintiff's for around 15 years. ECF

No. 52 ¶¶ 3–4.[16] He goes on to swear that:

> A few years ago, around 2016, while I was working at my store, an individual came
> into my store looking to sell a cell phone. At no point did the individual inform me
> that the phone was stolen. Later that day, I was arrested by NYPD officers as a
> result of this sale. I was informed that the individual was in fact a plain clothes
> [*sic*] officer who alleged that he told me the cell phone was stolen. He never said
> such a thing.
>
> As I recall the plain clothes [*sic*] officer said he worked for the [P]ostal [S]ervice
> and that he had found a phone which he held for some time until he got clearance
> from the [P]ostal [S]ervice to do with the phone as he wished. A search of the
> phone never revealed that it was stolen or lost nor did the plain clothes [*sic*] officer
> ever tell me that the phone was stolen. In fact, he did the opposite.
>
> This 2016 case was later dismissed.

*Id.* ¶¶ 7–9. Kane goes on to state that in 2019, a similar incident took place, in which a police

officer reportedly lied that the phone he sold to Kane was stolen. *Id.* ¶¶ 10–11. That case was

also dismissed. *Id.* ¶ 12. He further states that "[s]ometime in 2021, an employee of mine . . .

reported to me that an individual had come into the store and attempted to sell a cell phone that

this time he said was stolen. My employee refused to buy it." *Id.* ¶ 14. He then says that that

same employee told him that a similar interaction took place "later in 2021," but "the individual

did not claim that the phone was stolen," and Kane's employee did not buy the phone because

the seller did not produce ID. *Id.* ¶ 15. He says he has "good reason to believe," based on "an

---

[16]    Kane's business is at 1472 Fulton Street. ECF No. 52 ¶ 3. Plaintiff was arrested at 1251
Fulton Street. ECF No. 47-7 at 2.

officer's report" given to him by Plaintiff's counsel, that this second interaction took place on March 10, 2021. *Id.* ¶¶ 16–18.

As an initial matter, the City argues that the Kane Declaration should be excluded because Kane's identity was not disclosed until after the close of discovery, the Declaration was first served with Plaintiff's opposition to summary judgment, and the Declaration contains hearsay. ECF No. 53 at 5–9. Although the Court believes those arguments are meritorious, it need not resolve them here because, even if the Kane Declaration was admissible, it would be insufficient to create an issue of material fact on Plaintiff's *Monell* claim.

Analytically, the Kane Declaration can be analogized to another lawsuit, like those just discussed. Although it factually resembles this case much more closely than those other suits, it also more clearly suffers from a fatal defect, which is the absence of an adjudication of liability. *See Buari*, 530 F. Supp. 3d at 399. Here, it is helpful to back up and recall the specific argument Plaintiff advances: the NYPD has a custom or policy of "falsely arresting known innocent persons without probable cause." ECF No. 48 at 23. By Kane's own sworn statements, the 2021 incidents did not result in arrests (it's not even clear if they involved police), so they cannot move the needle. And, as it relates to the two arrests in 2016 and 2019, Kane never states that there was an adjudication of liability; instead, he asserts that his "arrests were all illegitimate" and were "cases of false arrest." ECF No. 52 ¶¶ 22, 25. He may believe that, but "none of these facts show that there has been *any* violation of constitutional rights, so there is no evidence of the predicate fact underlying the alleged custom and policy." *Rasmussen v. City of New York*, 766 F. Supp. 2d 399, 409 (E.D.N.Y. 2011) (emphasis in original); *see also Cox v. City of Rochester*, No. 22-cv-6207, 2025 WL 50340, at *6 (W.D.N.Y. Jan. 8, 2025) (concluding that incidents of dogs being shot by police "are insufficient to demonstrate a pattern of misconduct because they

26

do not provide any evidence that the officers acted unreasonably in shooting the dogs").

Accordingly, the Kane Declaration cannot defeat summary judgment, and the Court proceeds to

Plaintiff's last bucket of evidence.

### iii.    Third-Party Accounts

Last, Plaintiff points to several newspaper articles and related materials, not all of which

are even discussed in his Opposition.  ECF No. 48 at 25–28.  They are:

- A December 22, 2011, letter from a New York City Councilman to the then-NYPD Commissioner, in which he expresses concern that fencing operations were not targeting "merchants selling the stolen goods" but rather "openly soliciting people on the street by enticing them to buy the goods at a reduced price and then arresting the individual [*sic*] on the street."  ECF No. 50-7 at 2.  The Councilman expressed concern that police were "hell-bent on racking up arrest numbers."  *Id.* at 2–3.

- A December 16, 2011, news story reporting on a police operation to target sales of stolen iPads and iPhones, resulting in 141 arrests.  In it, two merchants complain about the sting operation being unfair.  *See NYPD Cracks Down on Sales of Stolen iPads and iPhones*, CBS News (Dec. 16, 2011, 11:55 PM), https://perma.cc/R5TR-QAFQ.[17]

- A January 6, 2012, opinion piece criticizing the use of sting operations and telling the story of a Brooklyn teenager who claimed that "he was tricked into buying an iPhone by an undercover cop posing as a street peddler."  *See* Shavana Abruzzo, *NYPD's Blue Line of Entrapment*, Brooklyn Paper (Jan. 6, 2012), https://perma.cc/WQY9-U4XB.

- A December 28, 2011, story from a local paper reporting on several of the same stories summarized in the above pieces and including another account of a man arrested in a fencing operation.  *See* ECF No. 50-10 at 2–3.

- A December 16, 2011, *New York Times* article reporting on the 141 arrests in a sting operation at the end of 2011.  *See* ECF No. 50-11 at 2.

- A February 4, 2019, opinion piece describing "Operation Lucky Bag," in which "[u]ndercover officers would plant a bag, usually with money or other valuables inside, in a public place.  They'd wait for someone to 'steal' the planted property then make an arrest."  The author of the piece accuses the police of entrapment.  *See* ECF No. 50-12 at 2–3.

---

[17]    The link to this article provided in Plaintiff's counsel's declaration does not work.  *See* ECF No. 50 at 2.

None of this is sufficient to defeat summary judgment on the *Monell* claim.  First, as an evidentiary matter, the Court agrees with the City, *see* ECF No. 53 at 13, that all this evidence is inadmissible hearsay not properly considered on summary judgment, *see, e.g.*, *McAllister v. NYPD*, 49 F. Supp. 2d 688, 705 n.12 (S.D.N.Y. 1999) ("Newspaper articles are hearsay . . . and therefore are not admissible evidence of [NYPD] policy or custom . . . ."); *accord R.A. v. City of New York*, 206 F. Supp. 3d 799, 804 (E.D.N.Y. 2016).  Plaintiff tries to avoid this obvious hearsay problem by asserting that he offers the evidence "for the purpose of proving that the municipality had notice with regard to the need for training and not for the truth of the matter asserted" and that the City "had notice that [these] practices existed and were [*sic*] deliberately indifferent with regard to training their [*sic*] employees."  ECF No. 48 at 26.  That would work in theory, but not in this case, because his way around the hearsay problem relies on, as just explained, an impermissibly broad understanding of *Monell* liability.  *See Green I*, 465 F.3d at 81 ("[A]t the summary judgment stage, plaintiffs must identify a specific deficiency in the city's training program and establish that that deficiency is closely related to the ultimate injury, such that it actually caused the constitutional deprivation.").

In any event, even if this evidence was admissible, it would be insufficient.  No article references a liability finding.  *See R.A.*, 206 F. Supp. 3d at 804 ("[A]ll of the newspaper articles reference cases not yet adjudicated.  As such, the newspaper articles establish only that other individuals have experienced similar violations of their constitutional rights as Plaintiffs allege here, not that the violations underlying those actions actually occurred.").  And most of the pieces refer to a single police operation that took place around 10 years before Plaintiff's arrest, and two of them (the letter from the Councilman and the 2019 article) describe sting operations unrelated to merchants.  They therefore necessarily fail to show "that his alleged constitutional

injury was *caused* by the purported policy or custom of which he complains." *Morgan v. City of New York*, No. 12-cv-704, 2014 WL 3407714, at *7 (E.D.N.Y. July 10, 2014) (emphasis in original) (rejecting use of newspaper articles to sustain *Monell* claim at summary judgment); *see also Presti v. City of New York*, No. 21-cv-3811, 2024 WL 3360404, at *12 n.17 (E.D.N.Y. July 10, 2024) (same).

For these reasons, Plaintiff has failed to come forth with admissible evidence raising a disputed issue of material fact as to the existence of a municipal custom or practice, and summary judgment is granted to the City on this claim.

## CONCLUSION

For the reasons explained herein, Plaintiff's first, second, sixth, and tenth causes of action, respectively alleging negligence; negligent hiring, training, and supervision; intentional infliction of emotional distress; and malicious prosecution, are dismissed without prejudice. All claims against the John and Jane Doe Defendants are dismissed without prejudice, and the Clerk of Court is respectfully directed to terminate them from this action. Summary judgment is granted on the seventh and eighth causes of action asserting freestanding claims of "Violation of Civil Rights" and "Violation of 42 U.S.C. § 1983." Summary judgment is also granted on Plaintiff's excessive force claim (within his fourth cause of action) against all Defendants, his failure to intervene claim (within his fifth cause of action) against all Defendants, and his *Monell* claim (within his ninth cause of action) against the City.

Summary judgment is denied as to the following claims, which shall proceed to trial: Plaintiff's federal false arrest claim (within the third cause of action) against Inoa; his state false arrest claim (within the third cause of action) against Inoa and the City; and his state assault and battery claim (within his fourth cause of action) against Inoa and the City.

The parties are directed to file their proposed joint pre-trial order ("JPTO") consistent with Section VI.B of the Court's Individual Practices on or before April 30, 2025.  After reviewing the proposed joint pre-trial order, the Court intends to promptly put this matter down for trial.  Consistent with the goals of Rule 1, and to avoid the risk of cumulative and unnecessary evidence in this relatively straightforward case, which has been substantially narrowed by this Order, the Court has decided to implement a time limitation for the trial of this matter.  Based on the limited number of issues that remain following this decision, the Court informs the parties that, at trial, each side will be allowed **10** hours of trial time in the presence of the jury (including jury addresses), for a total of **20** trial hours.  The time for jury selection will not count for either party.  Time will be kept by the Court and reported on the record periodically.  For the avoidance of doubt, time will accrue when counsel for a side is standing in the presence of the jury.  The proposed JPTO must conform to the **20** hours allotted for trial.

SO ORDERED.

*/s/ Hector Gonzalez*
HECTOR GONZALEZ
United States District Judge

Dated: Brooklyn, New York
       March 31, 2025